**PROFITNESS PHYSICAL THERAPY CENTER, Plaintiff–Appellant,**

v.

**PRO–FIT ORTHOPEDIC AND SPORTS PHYSICAL THERAPY P.C., Defendant–Appellee.**

**Docket No. 01–7874.**

United States Court of Appeals, Second Circuit.

Argued: May 16, 2002.
Decided: Dec. 24, 2002.

---

Anthony H. Handal, Handal & Morofsky, Norwalk, CT, for Plaintiff–Appellant.

Daniel H. Weiner, Hughes Hubbard & Reed LLP, New York, NY, for Defendant–Appellee.

Before WALKER, Chief Judge, WINTER and CALABRESI, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiff-appellant Pro Fitness Physical Therapy Center ("Pro Fitness" or plaintiff) appeals from the judgment and order of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *District Judge*) granting summary judgment in favor of defendant-appellee Pro–Fit Orthopedic and Sports Physical Therapy, P.C. ("Pro–Fit" or defendant) and ordering the parties to adopt a disclaimer of affiliation. In its complaint, which seeks damages and injunctive relief, Pro Fitness asserted against Pro–Fit claims of trademark infringement, trademark dilution, and unfair competition under the Lanham Act, and a related state law claim.

Pro–Fit moved for summary judgment, arguing that plaintiff's claims are estopped by acquiescence and laches. In a ruling from the bench, the district court granted summary judgment in favor of Pro–Fit on the basis of acquiescence and laches but ordered both parties to use a legend disclaiming affiliation in their advertising and other public references to their businesses. We vacate the judgment and order of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

This appeal arises from a trademark dispute between two businesses that offer physical therapy services in New York City. Except where noted, the facts are undisputed.

Since 1986, Pro Fitness has offered physical therapy services using the designation "Pro Fitness" and under the name "Pro Fitness Sports Medicine & Physical Therapy Center." It has held a registered federal trademark for the "Pro Fitness" designation since 1990 and has one office in Brooklyn and two in Manhattan. According to Pro Fitness, its "primary" or "home market" is Manhattan.

In January 1999, Pro–Fit started to offer the same physical therapy services as plaintiff under the name "Pro Fit Physical Therapy, P.C.," through an office in Bayside, Queens. In April 2000, Pro–Fit opened its first Manhattan office, which was followed by a second Manhattan office in March 2001. Pro–Fit claims that it was present in Manhattan, even when it only had an office in Queens, because it held seminars in Manhattan, "served clients in and beyond Queens," belonged to a Manhattan-based referral service, and "received referrals from many doctors located outside of Queens."

Pro Fitness claims that it first became aware of Pro–Fit in or about March 1999, approximately three months after defendant began operating. In June 1999, through counsel, Pro Fitness sent Pro–Fit a cease and desist letter. In that letter, plaintiff's counsel represented that Pro–Fit's "use of the term PRO-fit constitutes trademark infringement and unfair competition," and demanded that Pro–Fit "immediately cease and desist from any and all use of [defendant's] alleged mark." In the event that Pro–Fit refuses to comply, the letter continued, "we have been authorized to institute court action to prevent further violation of our clients' rights."

In response, Pro–Fit's counsel stated in a letter that they did "not believe that our

clients [sic] use of Pro–Fit Physical Therapy is an infringement on your clients [sic] trademark rights." "However," defendant's counsel further stated, "in light of the similarity between the names and in an effort to avoid any confusion or further conflict, our clients have decided to change their corporate identity to Profit Orthopedic and Sports Physical Therapy."

This effort at accommodation was met by silence. Pro–Fit informed Pro Fitness in a letter sent shortly after the first one that "a hyphen was mistakenly omitted for Pro–Fit." Pro–Fit noted that "[t]o this date we have not had any response regarding our proposed name change." Reiterating Pro–Fit's intent "to avoid any future conflict," Pro–Fit's counsel concluded that "[i]n the event that you do not respond, we will proceed as planned with our change of corporate name." Receiving no response from Pro Fitness, Pro–Fit changed its name to Pro–Fit Orthopedic and Sports Physical Therapy, P.C.

More than a year later, sometime around September 2000, Pro Fitness claims that it learned that Pro–Fit had opened an office in Manhattan. In a letter dated September 27, 2000, Pro Fitness threatened Pro–Fit with immediate legal action unless Pro–Fit immediately stopped using its allegedly offending mark. Pro–Fit refused to comply. On December 14, 2000, Pro Fitness received a letter from an insurance company that concerned one of its patients but was addressed to Pro–Fit. Pro Fitness claims that three similar instances of confusion followed, including a similarly misaddressed letter sent to Pro Fitness by a law firm.

In January 2001, Pro Fitness began this lawsuit. In its complaint, plaintiff claims that the defendant's name "Pro–Fit" is "confusingly similar" to plaintiff's name "Pro Fitness" and that defendant's use of that name in offering identical services is likely to confuse the public. Seeking both monetary damages and injunctive relief, plaintiff asserts claims of trademark infringement, trademark dilution, and unfair competition under the Lanham Act, as well as a related state law claim.

Defendant moved for summary judgment, asserting the equitable defenses of estoppel by acquiescence and laches. At a hearing before the district court, defendant Pro–Fit argued principally that plaintiff, by failing to respond to Pro–Fit's proposed name change, acquiesced in defendant's doing business under that name. In response to the claim of acquiescence, Pro Fitness argued that, under the doctrine of progressive encroachment, it had properly waited to assert its claims until, following defendant's expansion into plaintiff's "home market" of Manhattan, instances of actual confusion occurred.

Ruling from the bench, the district court granted defendant's motion for summary judgment. Finding that plaintiff had acquiesced and that New York City was all one market for physical therapy services, the district court rejected plaintiff's progressive encroachment theory and held that its suit was barred by both acquiescence and laches.

Because the district court had limited the parties' submissions to the issues of acquiescence and laches, it expressly declined to consider the likelihood of confusion, which it thought to be unrelated. However, in light of its finding of "some instances of actual confusion in the record" and "to avoid the possibility of confusion later on," the court ordered each party to use a legend in its advertising and other public references to its businesses stating that it and its staff "are not affiliated in any way" with the other party. This appeal followed.

## DISCUSSION

On appeal, Pro Fitness raises numerous objections to the district court's judgment and remedy. Pro Fitness denies that its failure to respond to defendant's proposed change of name constituted acquiescence to the use of that name. Plaintiff also argues that there are disputed facts precluding summary judgment concerning whether Manhattan and Queens were the same market for physical therapy services and whether defendant's expansion of its business, particularly from Queens into Manhattan, amounted to progressive encroachment on plaintiff's "home market." In addition, plaintiff argues that the district court erred in rejecting plaintiff's progressive encroachment claim without inquiring into the likelihood of public confusion of the parties' marks. Finally, Pro Fitness contends that the district court abused its discretion by ordering both parties to adopt a disclaimer.

We first turn to the issue of whether Pro–Fit was entitled to summary judgment based on the defenses of acquiescence and laches.

### I. Standard of Review.

We review a grant of summary judgment *de novo. Bernard v. Commerce Drug Co.,* 964 F.2d 1338, 1340 (2d Cir.1992). A grant of summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### II. Acquiescence, Laches and Progressive Encroachment.

■ We have long held in the context of trademark actions that "[w]here a person entitled to exclusive use of a trademark is guilty of unreasonable delay in asserting his rights against an infringer ..., or acquiesces in the latter's use, ... a court of equity has the discretionary power ... to deny injunctive relief or an accounting." *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686, 703 (2d Cir.1970) (citations and internal quotation marks omitted). As Judge Learned Hand once asked rhetorically, "how [plaintiff] can expect us to stifle a competition which with complete complaisance, and even with active encouragement, it has allowed for years to grow like the mustard tree; why we should destroy a huge business built up with its connivance and consent: this we find it impossible to understand." *Dwinell–Wright Co. v. White House Milk Co.,* 132 F.2d 822, 825–26 (2d Cir.1943).

■ The closely related doctrines of acquiescence and laches turn on "a consideration of the circumstances of each particular case and a balancing of the interests and equities of the parties." *Carl Zeiss,* 433 F.2d at 703 (internal quotation marks omitted). Findings of delay and prejudice are central to both of these defenses. The elements of acquiescence are: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir.2002) (internal quotation marks omitted). Similarly, to "prevail on the affirmative defense of laches, a defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir.1996).

■ Although "both [acquiescence and laches] connote consent by the owner to an infringing use of his mark, acquiescence implies active consent, while laches implies a merely passive consent." *Sara Lee*

Corp. v. Kayser–Roth Corp., 81 F.3d 455, 460, 462 (4th Cir.1996); see also Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569 n. 2 (6th Cir.2000). Active consent is implied by "conduct on the plaintiff's part that amount[s] to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." Carl Zeiss, 433 F.2d at 704 (internal quotation marks omitted). In the case of laches, "courts construe the plaintiff's unreasonable delay to imply consent to the defendant's conduct." Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 152 (5th Cir.1985).

■ Given the strong interest in preventing public confusion, however, a plaintiff's apparent acquiescence or delay in bringing suit does not necessarily bar relief. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 498 (2d Cir.1961). The doctrine of progressive encroachment and the requirement that a plaintiff's delay must be unreasonable both allow the plaintiff some leeway in the timing of his suit. Although a plaintiff cannot simply sleep on his rights, he "has no obligation to sue until the likelihood of confusion looms large" and his "right to protection [has] clearly ripened." Sara Lee, 81 F.3d at 462 (internal quotation marks omitted). Even where laches and acquiescence would bar damages, moreover, a court may nonetheless grant injunctive relief if it determines that the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit. See Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1207 (11th Cir.1997).

## III. Applications to This Case.

### A. Acquiescence

Although characterizing it as a close call, the district court found that Pro Fitness had actively consented because of the "two letters by defendant inviting the plaintiff to respond if it had objections [to defendant's proposed name change] and [plaintiff's] neglect or refusal to respond." On appeal, plaintiff denies that it ever acquiesced and claims that defendant's name change during the initial exchange of letters was in fact a further encroachment on plaintiff's mark.

■ As noted above, a plaintiff communicates active consent by conduct that amounts to an explicit or implicit assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark rights. See Zeiss, 433 F.2d at 704. The question in this case is whether continued silence by Pro Fitness in response to defendant's proposed name change constituted an implicit assurance that trademark rights would not be asserted, thereby reasonably "induc[ing] reliance by the defendant." Conan, 752 F.2d at 153.

■ Plaintiff argues that its cease and desist letter could not have reasonably induced reliance but rather put defendant on notice such that defendant thereafter acted at its peril. We disagree. It is true that "[a]ny acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of plaintiff's objection to such acts." Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 205 (5th Cir.1998). But in this case, Pro–Fit ameliorated the effect of the cease and desist letter by responding to the letter with a good faith proposal to change its name and expressly requesting a response from Pro Fitness with the caveat that a failure to respond would be understood as an agreement to the proposed name change. Upon receipt of this letter, plaintiff could easily have clarified its attitude toward defendant's new name with a simple letter stating its objections. Pro Fitness, however, neither responded nor carried out its threat to sue. Under these circumstances,

it was reasonable for defendant to rely on plaintiff's silence as consent to its good faith offer of accommodation to do business under a new mark.[1] We therefore agree with the district court that plaintiff acquiesced to defendant's use of Pro–Fit. The district court erred, however, in not properly evaluating the scope of that acquiescence.

▆▆▆ While a plaintiff may acquiesce in some uses of the mark and in any resulting likelihood of consumer confusion, that acquiescence does not extend to a use that has not yet materialized and is not foreseeable. By using the mark in a different manner or in a new geographic area, a defendant may exceed the scope of the plaintiff's consent and be exposed to liability for that extra-consensual use. As the Fifth Circuit held in *Conan*, it was error for the district court to find in effect that "acquiescence in one locale [Austin, Texas] eternally forecloses [plaintiff] from asserting its rights if [defendant] expands beyond that area [to San Antonio]." 752 F.2d at 152.

Plaintiff asserts that even if it acquiesced to defendant's use of Pro–Fit, its consent was limited to use of the mark in Queens and, therefore, defendant's expanded use of the mark at its new offices in Manhattan constituted actionable infringement. The district court rejected this argument by summarily concluding that Manhattan and Queens constituted but one market, such that plaintiff's acquiescence applied to both boroughs. We conclude, however, that the district court could not have properly determined the scope of plaintiff's consent because it ex-cluded from its analysis a critical circumstance bearing on that consent: the likelihood of confusion. In order to determine whether Pro–Fit's expansion into Manhattan exceeded the scope of Profitness's prior acquiescence, the district court needed to compare the likelihood of confusion from Pro–Fit's Queens establishment at the time that Profitness acquiesced and the likelihood of confusion from its new Manhattan facilities. Because the district court failed to make this inquiry, we cannot affirm its grant of summary judgment to Pro–Fit on the basis of acquiescence.

B. Laches, Prejudice, and Progressive Encroachment

▆▆▆ We next turn to the question of whether summary judgment could have been based on the ground of laches, because plaintiff unreasonably delayed bringing suit thereby causing prejudice to the defendant. *See Conopco*, 95 F.3d at 192. Plaintiff maintained before the district court that any delay in the commencement of its suit was excused by the doctrine of progressive encroachment. Plaintiff argued that it timely and promptly brought suit as soon as defendant moved into plaintiff's "home market" of Manhattan and instances of actual confusion occurred, and that an earlier suit would have been premature. On appeal, plaintiff argues that summary judgment was inappropriate because likelihood of confusion is essential to a progressive encroachment analysis and therefore the district court erred in not considering this factor. We agree.

---

1. We reject plaintiff's claim, made for the first time on appeal, that defendant's change of name—from "Pro–Fit Physical Therapy" to "Pro–Fit Orthopedic and Sports Physical Therapy"—amounted to an added infringement on plaintiff's mark by inserting the descriptive modifier "sports" to make defen-dant's name more closely resemble plaintiff's ("Profitness Sports Medicine and Physical Therapy Center"). Regardless of whether the new name infringes more or less, Profitness acquiesced to the use of that new name when it failed to respond to Pro–Fit's letter.

As noted earlier, the doctrine of progressive encroachment allows a plaintiff "some latitude in the timing of its bringing suit," permitting it to "wait[ ] until the 'likelihood of confusion looms large.'" *Kellogg,* 209 F.3d at 570–71 (quoting *Sara Lee,* 81 F.3d at 462); *see also Kason,* 120 F.3d at 1206; J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31.19 (4th ed.2002). The primary rationale is that a plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant. *See Kellogg,* 209 F.3d at 570–71; *Kason,* 120 F.3d at 1206; *Sara Lee,* 81 F.3d at 462. "[A]ny other rule would require each trademark owner to sue first and ask questions later," and would foster meritless litigation. *Kason,* 120 F.3d at 1206 (citation and internal quotation marks omitted). The doctrine of progressive encroachment, therefore, focuses the court's attention on the question of whether defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks. *See id.* at 1205.

Thus, in order to evaluate whether the doctrine of progressive encroachment excuses plaintiff's delay in bringing suit, the court must compare the likelihood of confusion from Pro-fit's Queens office and from its new Manhattan offices. However, as discussed above, the district court failed to conduct this comparative analysis. Because the district court could not properly resolve questions relating to progressive encroachment without considering the likelihood of confusion, its grant of summary judgment cannot be affirmed on the basis of laches. *See Kason,* 120 F.3d at 1206 (reversing grant of summary judgment on

the basis of laches because district court did not evaluate "under the progressive encroachment theory the point at which [plaintiff] could have demonstrated likelihood of confusion in its primary ... market").

## IV. Relief Granted by the District Court.

Finding specific instances of actual confusion, although not as part of its analysis of acquiescence or laches, the district court required both parties to affix to various of their forms, advertising, and promotional materials a legend stating that the parties "are not affiliated in any way." While the record is too sparse to allow us to review the district court's grant of relief meaningfully, we think that the district court on remand should revisit that award in light of the following considerations.

A court is generally accorded a "wide range of discretion" and flexibility in framing relief in trademark infringement cases. *Soltex Polymer Corp. v. Fortex, Indus., Inc.,* 832 F.2d 1325, 1329 (2d Cir.1987) (quotation omitted). However, we also have noted that while disclaimers may prevent consumer confusion, a "growing body of academic literature has concluded that disclaimers, especially those ... which employ brief negator words such as 'no' or 'not,' are generally ineffective." *Charles of the Ritz Group, Ltd. v. Quality King Distribs., Inc.,* 832 F.2d 1317, 1324 (2d Cir.1987); *see also Home Box Office, Inc. v. Showtime/The Movie Channel Inc.,* 832 F.2d 1311, 1315 (2d Cir. 1987) (collecting sources). Such disclaimers might be effective to cure a minimal or moderate amount of confusion, but a case involving more substantial confusion might require more than the simple "not affiliated" language ordered by the district court in this case. *See Charles of the Ritz,* 832 F.2d at 1324 (approving, in a case involv-

ing "substantial confusion," the district court's requirement that "the disclaimer be prominent and also indicate that the two companies were competitors, rather than allowing the current ambiguous wording 'not related to' "). And in some cases involving more substantial confusion and trademark infringement, we have required the infringing user "to come forward with evidence sufficient to demonstrate that any proposed [disclaimers] would significantly reduce the likelihood of consumer confusion." *Home Box Office*, 832 F.2d at 1316.

Beyond its finding of instances of actual confusion occurring after defendant expanded into Manhattan, the district court here made no finding as to the level of confusion, nor did it require that defendant justify the remedy. Upon remand, if the district court again finds actual confusion, it should determine the specific level of confusion and fashion relief accordingly.

To recap, we hold that plaintiff has, as a matter of law, acquiesced in defendant's use of the mark in question at defendant's Queens establishment. However, for the reasons stated, based on the present record, a material issue of fact exists as to whether plaintiff has acquiesced in the use of the mark at defendant's Manhattan establishment. We also hold that the district court erred in granting summary judgment on the issue of laches because the present record is insufficient to dispose of plaintiff's defense of progressive encroachment. Resolution of these issues requires further proceedings. Accordingly, we vacate the district court's entry of summary judgment and remand for further proceedings.

On remand, after inquiring into the likelihood of confusion in Queens and Manhattan, the district court should resolve—on summary judgment if possible, or else at trial—the following questions: (1) whether defendant's subsequent expansion into Manhattan from Queens exceeded the scope of plaintiff's acquiescence; (2) whether plaintiff delayed in bringing suit and, if so, whether all or part of its delay was justified because its cause of action did not ripen until the defendant expanded into Manhattan and actual instances of confusion occurred; and, (3) whether, and to what extent, the likelihood of confusion warrants injunctive or other equitable relief.

## CONCLUSION

The judgment and order of the district court is vacated. The case is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs.