# United States Court of Appeals
## For the First Circuit

Nos. 11-1473, 11-1476

ORIENTAL FINANCIAL GROUP, INC.,
ORIENTAL FINANCIAL SERVICES CORP.,
ORIENTAL BANK AND TRUST,

Plaintiffs, Appellants/Cross-Appellees,

v.

COOPERATIVA DE AHORRO Y CRÉDITO ORIENTAL,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Boudin, Selya and Dyk,[*]
Circuit Judges.

Roberto C. Quiñones-Rivera, with whom Leslie Yvette Flores, and McConnell Valdes LLC, were on brief, for appellants.
James W. McCartney, with whom Jean G. Vidal Font, and Cancio, Nadal, Rivera & Diaz, P.S.C., were on brief, for appellee.

October 18, 2012

[*]Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**.    The parties in this case are competing financial institutions operating in Puerto Rico. Plaintiffs-Appellants/Cross-Appellants, Oriental Financial Group, Inc., Oriental Financial Services Corp., and Oriental Bank and Trust[1] (collectively, "Oriental"), have for many years used the ORIENTAL mark in connection with the advertising, promotion, and offering of financial services in Puerto Rico.  Oriental contends that beginning in or around 2009, Defendant-Appellee/Cross-Appellant, Cooperativa De Ahorro y Crédito Oriental ("Cooperativa"), used a confusingly similar mark, COOP ORIENTAL, and a confusingly similar logo containing that mark in connection with its financial business and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Puerto Rico trademark law.

Finding a likelihood of confusion, the district court ordered Cooperativa to cease all use of its new 2009 logo (which used the COOP ORIENTAL mark with an orange trade dress), but allowed Cooperativa to revert back to using its pre-2009 logo (also containing the COOP ORIENTAL mark, but with a different trade dress).  On appeal, Oriental contends that the district court's injunction should have been broader to include any use of the COOP ORIENTAL mark and similar marks (even when divorced from the trade

---

[1]    Oriental Financial Services Corp. and Oriental Bank and Trust are subsidiaries of Oriental Financial Group, Inc.

-2-

dress in the 2009 logo). Cooperativa counters that Oriental's claim for injunctive relief against the COOP ORIENTAL mark and similar marks fails on the merits because there is no likelihood of confusion and the claim is barred by laches.

We hold that Oriental's claims are not barred by laches because of the doctrine of progressive encroachment, and remand to the district court to determine whether there is a likelihood of confusion as to the COOP ORIENTAL mark and other marks and whether the injunction should be broader, as Oriental contends.

## I.

Oriental first began using the ORIENTAL mark in connection with its financial services business in 1964, when Oriental's predecessor, Oriental Federal Savings, opened its first branch in the city of Humacao, located in southeastern Puerto Rico. Until the late 1980s Oriental operated six branches, each located in the southeastern region of Puerto Rico. In the early 1990s, Oriental began to expand to other regions of Puerto Rico, and by 1996, Oriental had relocated its main office from Humacao to San Juan, in northern Puerto Rico, and operated sixteen branch offices located in the metropolitan (near San Juan), eastern, and western regions of Puerto Rico. By 2009, Oriental operated 21 branches throughout Puerto Rico, and by 2010, 43.

Oriental's competitor, Cooperativa, is a non-profit credit union offering various banking services such as personal

checking and savings accounts, loans, and credit products. Cooperativa first began using the mark ORIENTAL in 1966 when its full corporate name was "Cooperativa De Crédito Oriental."[2] Thus, Cooperativa began to use the COOP ORIENTAL mark after Oriental, and on appeal, it is undisputed that Oriental is the senior user entitled to trademark protection. See Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815 (1st Cir. 1987) ("The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection with a peculiar line of business.").

At the time that Cooperativa first used the COOP ORIENTAL mark, Cooperativa's operations were geographically limited. In 1966, Cooperativa operated one branch (its current headquarters) located in Humacao. As of 1996, it operated three branches, with two of those branches based in Humacao and one branch based in Loiza, which is in northeastern Puerto Rico. Starting in 2008, Cooperativa began expanding its geographic reach by purchasing branches of other cooperatives. Cooperativa purchased three branches in San Juan in 2008, 2009, and 2010, respectively. Additionally, in 2010, Cooperativa purchased a branch in Ponce, located in southern Puerto Rico. As described in detail below, Cooperativa's allegedly infringing advertising and other activity

---

[2]     In 1973, Cooperativa changed its name to its current corporate name, "Cooperativa De Ahorro y Crédito Oriental."

-4-

was limited until the late 2000s. But consistent with its geographic expansion, in 2009, Cooperativa also began an expansive advertising campaign in newspapers and on television, including the use of advertising media not previously used by it, such as billboards and cable television. As a part of its new advertising campaign, Cooperativa also adopted a new logo using the COOP ORIENTAL mark. Cooperativa's new logo contained an orange trade dress similar to the orange trade dress used in Oriental's logo. Additionally, the size of the term "COOP" was reduced in Cooperativa's new logo, emphasizing the term "ORIENTAL," when compared to prior versions of its logo also containing the COOP ORIENTAL mark.

On December 9, 2009, Oriental sent Cooperativa a cease and desist letter "demand[ing] that [Cooperativa] **IMMEDIATELY CEASE AND DESIST** from the unauthorized use of the ORIENTAL mark or any variant or derivative thereof as part of its corporate or commercial name, services or the domain name of its website." J.A. 800. Despite the letter, Cooperativa continued to use the COOP ORIENTAL mark.

On May 21, 2010, Oriental filed suit against Cooperativa in the United States District Court for the District of Puerto Rico, asserting causes of action for, inter alia, service mark

infringement under the Lanham Act and Puerto Rico law.[3] In particular, Oriental alleged that Cooperativa's "COOP ORIENTAL name is confusingly similar to [Oriental's] ORIENTAL Marks," and that Cooperativa's "COOP ORIENTAL logo . . . is confusingly similar with the ORIENTAL Marks." J.A. 15. Oriental thus sought to enjoin Cooperativa from, among other things, "directly or indirectly infringing any of [Oriental's] rights in the ORIENTAL Marks . . . [by] use of: (i) the term ORIENTAL, including stylized depictions thereof; (ii) any composite trademark that includes the term ORIENTAL; or (iii) any composite trademark, including design marks and slogans, that comprises the term ORIENTAL[.]" J.A. 28. Oriental also sought damages for Cooperativa's infringement. Cooperativa contended that Oriental's claims were barred by laches.

The district court held a preliminary injunction hearing in September 2010. The parties agreed to convert the hearing into a permanent injunction hearing. On October 20, 2010, after the hearing, the district court issued an Opinion and Order granting a limited injunction against Cooperativa. See Oriental Fin. Grp. Inc. v. Cooperativa De Ahorro y Crédito Oriental ("Injunction Order"), 750 F. Supp. 2d 396, 401 (D.P.R. 2010). In its opinion,

---

[3] Oriental also asserted causes of action for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); unfair competition and service mark dilution under the Lanham Act, 15 U.S.C. § 1125(a),(c); and unfair competition under Puerto Rico law, P.R. Laws Ann. tit. 10, § 259. However, these claims are not involved in these appeals.

-6-

before addressing the merits, the court "briefly consider[ed] [Cooperativa's] argument that [Oriental's] claims are barred by laches." Id. at 402. The court reasoned that although Oriental "claim[s] an exclusive right to use the term 'Oriental' in relation to financial services in Puerto Rico, . . . their submissions to the court indicate their view that the infringing activity began in 2009, with Defendant's deployment of its new logo and advertising campaign." Id. Thus, the court found "inapposite [Cooperativa's] arguments as to [Oriental's] delay in complaining about [Cooperativa's] use of 'Oriental,' which dates back to 1966, or 'Coop Oriental,' which dates back to 1995." Id. Accordingly, the district court declined to address the merits of Cooperativa's laches defense.

The court found that Oriental's new logo infringed the ORIENTAL mark by creating a likelihood of confusion. Id. at 404. The court also determined that Oriental suffered ongoing and irreparable harm because of Cooperativa's infringement, that the balance of hardships favored Oriental, and that the public interest would be served by an injunction. Id. at 405; see eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-94 (2006). Thus, the district court enjoined Cooperativa from "using its new logo—in particular, the prominent placement of the word 'Oriental'—and its new color scheme, the combination of which infringes [Oriental's]

service mark under both federal and Puerto Rico law." Injunction Order, 750 F. Supp. 2d at 406.

In contrast, the district court specifically allowed Cooperativa to "revert to the mark and dress it used prior to 2009," which included use of the COOP ORIENTAL mark, or to "adopt new [logos] consistent with th[e] injunction." Id. The district court did not address the likelihood of confusion posed by the COOP ORIENTAL mark or other similar marks, noting that it did not "find that [Cooperativa's] use of 'Oriental' in all instances constitutes infringement, nor [that] . . . its use of 'Coop Oriental' [was] per se infringing." Id. at 404.

The district court declined to award Oriental damages for Cooperativa's infringement, noting that Oriental presented "no evidence of quantifiable damages," and "[t]he controversy is now resolved and no discernible major future damages seem apparent." Id. at 405. Damages are not an issue on appeal.

On November 18, 2010, the district court held a status conference with the parties during which Cooperativa submitted several proposed new logos for the court's approval. The district court indicated which logos were permissible by either circling or crossing out the proposed logos. The district court crossed through every logo that used the COOP ORIENTAL mark (each of which no longer contained an orange trade dress), but approved nearly all of the logos that used only Cooperativa's full corporate name,

"Cooperativa De Ahorro y Crédito Oriental." On December 6, 2010, Oriental filed a motion seeking attorneys' fees. Cooperativa and Oriental settled the fees issue on December 23, 2010, with Cooperativa agreeing to pay $55,000 in fees to Oriental.

On January 11, 2011, the district court denied Oriental's motion to amend or alter the court's injunction order, in which Oriental sought to broaden the district court's injunction to extend to all use of the COOP ORIENTAL and COOPERATIVA ORIENTAL marks. The district court reasoned that Oriental "presented evidence of consumer confusion that was limited to the time following the 2009 overhaul of [Cooperativa's] corporate image—that is, not coinciding with the use of its shortened names, which began in 1995," and thus refused to "find that use infringing under federal trademark law." J.A. 505. The district court entered final judgment on March 10, 2011. Oriental timely appealed, and Cooperativa cross-appealed.

## II.

Section 43(a) of the Lanham Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . [which] is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).[4] "Generally speaking, the [Lanham] Act proscribes the unauthorized use of a service mark when the particular usage causes a likelihood of confusion with respect to the identity of the service provider."  Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996); see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) ("It is, of course, . . . undisputed that liability under § 43(a) [of the Lanham Act] requires proof of the likelihood of confusion.").

While the district court's overall approach to this case was generally both careful and correct, we conclude that the district court made an error that requires a remand.  The district court was correct that Oriental sought injunctive relief only based on Cooperativa's alleged infringing activities beginning in 2009 (when Cooperativa combined use of the COOP ORIENTAL mark with a new orange trade dress similar to that used in Oriental's logo).  But to the extent that the district court concluded that Oriental did not challenge the COOP ORIENTAL mark divorced from the 2009 orange trade dress, it was incorrect.

The record is clear that Oriental challenged not only Cooperativa's use of the 2009 logo and trade dress, but also

---

[4]     "The Puerto Rico Trademark Act of 2009 incorporates elements of federal trademark law . . . . Article 26 of the Act is the analogue to [section 43(a) of the Lanham Act], and it similarly creates civil liability for infringement of service marks used in Puerto Rico."  Injunction Order, 750 F. Supp. 2d at 405.

-10-

Cooperativa's use of the COOP ORIENTAL mark and similar marks apart from that trade dress. Oriental's complaint alleged that "[i]n or around 2009," Cooperativa expanded its business to San Juan and "launched a new brand identity featuring the confusingly similar name COOP ORIENTAL in advertising and sales literature published in a variety of media." J.A. 15. Oriental also explicitly asserted that Cooperativa's "use of the name COOP ORIENTAL infringes [Oriental's] ORIENTAL Marks and is likely to cause confusion, mistake and deception of the public as to the identity and origin of [Cooperativa] and its business, product and services . . . ." J.A. 21. Accordingly, Oriental sought an injunction barring Cooperativa's use of "the name COOP ORIENTAL or any other name substantially similar to the ORIENTAL Marks." J.A. 22. Thus, Oriental's claims were not limited to the COOP ORIENTAL mark combined with the trade dress used in the 2009 logo, but were directed to all use of the COOP ORIENTAL mark and other confusingly similar marks. (Oriental did not, and does not, object to Cooperativa's use of its full corporate name.)

Although Oriental clearly asserted a claim of infringement against Cooperativa's use of the COOP ORIENTAL mark standing alone, the district court's treatment of this claim is seemingly in tension. On the one hand, the district court (1) apparently found that Oriental challenged only the 2009 logo and trade dress, (2) found that use of the COOP ORIENTAL mark was not

"per se infringing," and (3) granted an injunction which permitted Cooperativa to "revert to the mark and dress it used prior to 2009" (which contained the COOP ORIENTAL mark). Injunction Order, 750 F. Supp. 2d at 404, 406. In an apparent conflict with these determinations, in its post-injunction status conference, the district court rejected Cooperativa's use of all proposed logos containing the COOP ORIENTAL mark standing alone (without the 2009 trade dress).

Then, following the status conference, the district court rejected Oriental's request that the injunction be broadened to include all use of the abbreviated COOP ORIENTAL mark on the ground that Oriental had not presented pre-2009 evidence of actual consumer confusion relating to Cooperativa's use of the COOP ORIENTAL mark. See J.A. 505.

This ruling is contrary to the established principle that evidence of actual confusion is not necessary to establish a likelihood of confusion. Although "an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists," Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993), "a plaintiff [suing under the Lanham Act] need only show that a likelihood of confusion is in prospect; a showing of actual confusion is not required." Societe Des Produits Nestle, S.A. v.

<u>Casa Helvetia, Inc.</u>, 982 F.2d 633, 640 (1st Cir. 1992) (emphasis added).[5]  Thus, contrary to the district court's statement, the fact that there was no pre-2009 evidence of actual confusion is not dispositive of Oriental's challenge to Cooperativa's use of the COOP ORIENTAL mark (though, as we note below, this lack of pre-2009 evidence should be considered by the district court in its likelihood of confusion analysis).

Given the district court's treatment of this issue, we think that a remand is necessary to consider whether Oriental is entitled to broader injunctive relief.  In addressing that question, the key issue is whether the use of COOP ORIENTAL standing alone would create a likelihood of confusion.  (As discussed below, the likelihood of confusion issue is also raised with respect to other similar marks, but the record is less well developed as to these other marks.)

---

[5]  <u>See also</u> <u>Venture Tape Corp.</u> v. <u>McGills Glass Warehouse</u>, 540 F.3d 56, 61-62 (1st Cir. 2008) ("While evidence of actual confusion is often deemed the best evidence of possible future confusion, proof of actual confusion is not essential to finding likelihood of confusion." (quoting <u>Borinquen Biscuit Corp.</u> v. <u>M.V. Trading Corp.</u>, 443 F.3d 112, 120 (1st Cir. 2006)) (internal quotation marks omitted)); <u>Volkswagenwerk Aktiengesellschaft</u> v. <u>Wheeler</u>, 814 F.2d 812, 818 (1st Cir. 1987) ("A showing of actual confusion is not essential in order to find a likelihood of confusion."); <u>Baker</u> v. <u>Simmons Co.</u>, 307 F.2d 458, 463 (1st Cir. 1962) (noting that "to satisfy the standard of a likelihood of confusion," "[a]ctual examples of confusion were not required").

**III.**

"Eight factors . . . are typically used to assess the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004). This court has made clear that "[t]he application of [the eight] factors to the record is a highly fact-intensive inquiry." The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 22 (1st Cir. 2010). "A proper analysis takes cognizance of all eight factors but assigns no single factor dispositive weight." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 10 (1st Cir. 2012) (quoting Borinquen Biscuit Corp., 443 F.3d at 120); see also Venture Tape, 540 F.3d at 61 ("No single criterion is necessarily dispositive in [the likelihood of confusion] inquiry.").

In its injunction order, the district court appeared to analyze the eight factors only with respect to the 2009 logo. However, many of the findings made by the district court are not specific to the orange trade dress contained in the 2009 logo, and thus are equally relevant in assessing Cooperativa's use of the

-14-

COOP ORIENTAL mark standing alone. For example, the district court weighed the second (similarity of the goods) and third (relationship between the parties' channels of trade) factors in favor of Oriental, noting that Oriental and Cooperativa "offer many of the same services to some of the same geographical regions in Puerto Rico." Injunction Order, 750 F. Supp. 2d at 403. The district court similarly weighed the fourth (relationship between the parties' advertising) and fifth (classes of prospective purchasers) factors in favor of Oriental, recognizing that Oriental and Cooperativa "advertise in the same newspapers, and [Cooperativa] does not limit its clientele to a particular income level."[6] Id. Finally, as to the eighth factor (strength of the plaintiff's mark), the court found (as conceded by Cooperativa) that Oriental's "mark is strong in Puerto Rico." Id. at 403-04. These factual findings equally support a finding of likelihood of confusion with respect to the COOP ORIENTAL mark divorced from the 2009 logo.

In addition to these findings by the district court, Oriental urges that evidence with respect to other factors also weighs in favor of finding a likelihood of confusion. While the evaluation of this evidence is for the district court in the first

---

[6] Oriental contended that although Cooperativa claimed to serve primarily low-income customers, with its 2009 expansion, Cooperativa sought to cater to a larger segment of the population. The district court agreed with Oriental.

instance, we conclude that there is at least evidence in the record that would support Oriental's position. Oriental points out with reference to the first factor (similarity of the marks) that the only difference between the marks is the use of the term "COOP" in Cooperativa's mark. "COOP" (short for cooperative (or in Spanish, cooperativa)) is merely a descriptive term. "[A]ddition of a suggestive or descriptive element [to an arbitrary mark] is generally not sufficient to avoid confusion."[7] 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:50 (4th ed. 2012). Moreover, the ORIENTAL mark is used as a surname in Oriental's family of marks to identify businesses and services associated with Oriental, rendering the addition of "COOP" even less significant. See J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 1462 (Fed. Cir. 1991) ("A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner."). Thus, the first factor could weigh in favor of Oriental.

As to the sixth factor (evidence of actual confusion), as noted above, the district court erred to the extent that it held

---

[7] The district court found that the ORIENTAL mark is "an arbitrary mark that merits protection under federal trademark law." Injunction Order, 750 F. Supp. 2d at 403. Cooperativa does not challenge this finding.

-16-

that an absence of evidence of pre-2009 actual confusion necessitates a finding of no likelihood of confusion. But, even though not required, Oriental presented evidence of post-2009 actual confusion arguably attributable to use of the COOP ORIENTAL mark standing alone.

A supervisor at one of Oriental's branches testified that several customers had attempted to cash checks bearing the name COOPERATIVA ORIENTAL at the Oriental branch, apparently associating that name with Oriental's business. The supervisor also testified that customers with Cooperativa accounts had attempted to withdraw or deposit money at the Oriental branch. A customer relations officer at a different Oriental branch also testified that customers had called an Oriental branch attempting to verify their accounts, which were actually held by Cooperativa. These customers, according to the employee's testimony, relied on the similarity of Oriental's marks and the COOP ORIENTAL mark in assuming that Cooperativa was a subsidiary of Oriental. Oriental also presented several other examples of actual consumer confusion, including telephone calls by Cooperativa customers to Oriental branches and inquiries by Oriental customers about branches that actually were a part of Cooperativa. Each of these instances of actual confusion appeared to be attributable to the use of the name COOP ORIENTAL without the logo. Such evidence of actual customer

confusion could support a finding of likelihood of confusion with respect to use of the COOP ORIENTAL mark standing alone.

At the same time, Cooperativa argues that Oriental's lack of pre-2009 evidence of actual confusion also bears on the likelihood of confusion question, especially given that the COOP ORIENTAL mark was used by Cooperativa before 2009, and there is no evidence of pre-2009 confusion. As we discuss above, the absence of such evidence might be pertinent, though that seems unlikely given the very limited nature of Cooperativa's pre-2009 activity, as addressed in detail below.

Finally, as to the seventh factor (defendant's intent in adopting its mark), Oriental contends that Cooperativa was aware of and seeks to benefit from Oriental's reputation and recognition in the financial services industry by using the COOP ORIENTAL mark. Indeed, as Oriental points out, the district court has already found, based on the similarity of Cooperativa's mark and trade dress, that Cooperativa "knew of and intended to benefit from [Oriental's] considerable advertising efforts." Injunction Order, 750 F. Supp. 2d at 403. A similar inference might also be drawn based upon Cooperativa's use of the COOP ORIENTAL mark standing alone.

In short, the district court has already found that some of the eight factors support a finding of likelihood of confusion. As to the others, Oriental has presented evidence that, if

-18-

credited, could also weigh in favor of finding a likelihood of confusion based upon use of the COOP ORIENTAL mark on its own. However, we have warned that "this court on appeal will not undertake to find the facts or to lay down rulings on specific issues . . . , but will remand the case to the court below for final disposition on the evidence." Munoz v. Porto Rico Ry. Light & Power Co., 83 F.2d 262, 270 (1st Cir. 1936). Accordingly, we remand to the district court to determine whether Cooperativa's use of the COOP ORIENTAL mark creates a likelihood of confusion, entitling Oriental to broader injunctive relief.

We note that Oriental also challenges Cooperativa's use of the COOPERATIVA ORIENTAL mark and other potentially infringing marks. It does not appear that the district court has made any findings regarding these allegedly infringing marks. On remand the district court should also consider whether the COOPERATIVA ORIENTAL mark (and other potentially infringing usages of the ORIENTAL mark) poses a likelihood of confusion. This consideration does not include evaluation of Cooperativa's full corporate name, which Oriental concedes is non-infringing.

## IV.

We turn now to Cooperativa's cross-appeal. While Cooperativa asserts the defense of laches as a cross-appeal, it is in reality offering another ground for affirming the judgment of the district court. Cooperativa does not challenge the judgment

entered by the district court, enjoining it from use of the 2009 logo and trade dress, but rather urges that the judgment be affirmed. And Cooperativa is clear that it no longer seeks to use the new logo adopted in 2009, and it has fully complied with the district court's injunction. Cooperativa contends only that the expanded injunction sought by Oriental is barred by the doctrine of laches because the COOP ORIENTAL mark and earlier variations were used by Cooperativa as early as 1995, but such use went unchallenged by Oriental.

"Laches . . . is an equitable doctrine which penalizes a litigant for negligent or wilful failure to assert his rights . . . ." Valmor Prods. Co. v. Standard Prods. Corp., 464 F.2d 200, 204 (1st Cir. 1972). Although the circuits vary somewhat in their interpretations as to when the laches defense can operate to bar injunctive relief, the defense is now generally accepted whether asserted as a defense to an injunction or damages, and we agree that the defense is available in some circumstances to defend against an injunction.[8] We need not address those circumstances in

_____

[8] "The argument that laches is never a defense to an injunction, no matter what the equities, has been asserted and rejected in several cases." 6 McCarthy, supra, § 31:6 n.2.

The general rule of the circuits, as quoted with approval by Professor McCarthy, has been that "'mere delay' will not, by itself, bar a plaintiff's suit, but there must be some element of estoppel, such as reliance by the defendant. . . . All this means, however, is that a balancing of the equities is required, which would be the case with any principle of equity." 6 Id. § 31:6 (quoting Saratoga Vichy Spring Co. v. Lehmann, 625 F.2d 1037, 1040 (2d Cir. 1980)). This view is corroborated by a majority of the

detail because, as will be seen, we conclude that the defense is
not available here.

<hr />

circuits. See, e.g., Ray Commc'ns, Inc. v. Clear Channel Broad.,
Inc., 673 F.3d 294, 307 (4th Cir. 2012) (noting that "laches may
act as a bar to both monetary and injunctive relief under certain
circumstances," such as where aggravating factors cause the balance
of the equities to strongly favor the defendant (emphasis in
original)); Univ. of Pitt. v. Champion Prods., Inc., 686 F.2d
1040, 1045 (3d Cir. 1982) (noting that cases can "give rise to
affirmative rights in the defendant as a result of detrimental
reliance" under a laches theory, but that cases involving "mere
delay" will not bar prospective injunctive relief); Prudential Ins.
Co. v. Gibraltar Fin. Corp., 694 F.2d 1150, 1152 n.1 (9th Cir.
1982) (noting that that "[t]here is a wealth of authority in other
circuits that laches can bar injunctive relief" and citing several
cases where the balancing of the equities favored the defendant);
Armco, Inc. v. Armco Burglar Alarm Co., Inc., 693 F.2d 1155, 1161
n.14, 1161-62 (5th Cir. 1982) (noting that "[t]here is no doubt
that laches may defeat claims for injunctive relief" and
considering the equitable factors involved in the laches defense);
Saratoga Vichy Spring Co., 625 F.2d at 1040 (noting that a
balancing of the equities beyond "mere delay" is needed to bar the
plaintiff's prayer for injunctive relief under a laches theory);
Seven-Up Co. v. O-So-Grape Co., 283 F.2d 103, 106 (7th Cir. 1960)
("Laches does not necessarily constitute a conclusive and automatic
bar to injunctive relief in trademark actions. However, in many
instances, the delay may be so prolonged and inexcusable that it
would be inequitable to permit the plaintiff to seek injunctive
relief as to future activities.").

    Currently only the Sixth Circuit has suggested that
laches cannot be a defense to injunctive relief. Kellogg Co. v.
Exxon Corp., 209 F.3d 562, 568 (6th Cir. 2000) ("Although laches
precludes a plaintiff from recovering damages, it does not bar
injunctive relief."). McCarthy suggests that "a careful reading of
[this case] reveals either that such language was dictum, that [the
case was] lacking the traditional elements of an estoppel by laches
or that [it] was merely referring to 'delay' per se." 6 McCarthy,
supra, § 31:6.  Indeed, Kellogg acknowledges that 'there is that
narrow class of cases where the plaintiff's delay has been so
outrageous, unreasonable and inexcusable as to constitute a virtual
abandonment of its right.'" 209 F.3d at 569 (quoting Univ. Of
Pitt., 686 F.2d at 1044).

"Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Museum of Fine Arts, Bos. v. Seger-Thomschitz, 623 F.3d 1, 10 n.9 (1st Cir. 2010) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)). However, laches applies only where the plaintiff knew or should have known of the infringing conduct. See Valmor Prods., 464 F.2d at 204; see also What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex., 357 F.3d 441, 450 (4th Cir. 2004) ("Instead of focusing on when the trademark owner first knew that another party was using its mark, the court should be trying to determine the time at which the use became infringing and the time at which the owner should have known it . . . ."); ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 70 (2d Cir. 2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known . . . that plaintiff had a provable infringement claim against defendant.").

Oriental contends that Cooperativa's laches defense should be rejected both because: (1) Cooperativa failed to establish that Oriental had actual or constructive knowledge of Cooperativa's use of the COOP ORIENTAL mark prior to 2009, and (2) Cooperativa failed to establish prejudice. We need not resolve these questions — which involve factual disputes between the

-22-

parties — for we conclude now that, even if both knowledge and prejudice were established — the laches defense is barred by the doctrine of progressive encroachment.

As the Sixth Circuit noted in Kellogg, "Progressive encroachment is an offensive countermeasure to the affirmative defense[] of laches . . . ; upon a finding of progressive encroachment, the delay upon which [laches is] premised is excused." Kellogg Co. v. Exxon Corp., 209 F.3d 562, 571 (6th Cir. 2000). There is general agreement in other circuits that the doctrine of "progressive encroachment" can bar the defense of laches, and that "a trademark owner is not forced by the rule of laches to sue" where the doctrine applies. 6 McCarthy, supra, § 31:20; see Roederer v. J. Garcia Carrion, S.A., 569 F.3d 855, 859-60 (8th Cir. 2009); Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1110 (9th Cir. 2006); ProFitness Physical Therapy, 314 F.3d at 69-70; Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 794 (7th Cir. 2002); Kellogg, 209 F.3d at 570-73; Kason Indus., Inc. v. Component Hardware Grp., Inc., 120 F.3d 1199, 1205-06 (11th Cir. 1997). We join our sister circuits in holding that the doctrine of progressive encroachment can bar the laches defense in a trademark case, and we conclude that, based on the undisputed facts, this doctrine is applicable here.

As a general rule the progressive encroachment doctrine requires proof that (1) during the period of the delay the plaintiff could reasonably conclude that it should not bring suit to challenge the allegedly infringing activity; (2) the defendant materially altered its infringing activities; and (3) suit was not unreasonably delayed after the alteration in infringing activity. See generally 6 McCarthy, supra, § 31:20. Here, satisfaction of the second and third requirements are not open to serious dispute.

The second requirement "turns . . . on the likelihood of confusion resulting from the defendant's moving into the same or similar market area and placing itself more squarely in competition with the plaintiff." Kellogg, 209 F.3d at 573 (emphasis added). Put succinctly, we ask "whether [the] defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks." ProFitness Physical Therapy, 314 F.3d at 70 (emphasis added); Kason Indus., 120 F.3d at 1205; see also Tillamook Country Smoker, 465 F.3d at 1110 ("To establish progressive encroachment, [a plaintiff] . . . ha[s] to show that [the defendant] 'expand[ed] its business into different regions or into different markets.'" (quoting Grupo Gigante SA De CV v. Dallo & Co., Inc., 391 F.3d 1088, 1103 (9th Cir. 2004) (emphasis added))). Increases in the allegedly infringing advertising are also pertinent.

During the period from 2008 to 2010, Cooperativa materially altered the reach of both its operations and its allegedly infringing advertising. As to its operations, Cooperativa operated only three branches in the mid to late 1990s, and these branches were located almost exclusively within Humacao. At that time, Cooperativa had no presence in San Juan. Oriental, meanwhile, was operating several branches throughout the northern, eastern, and western regions of Puerto Rico, with its main office in San Juan. It was not until 2008 that Cooperativa began to expand its business into San Juan, acquiring three San Juan branches by 2010.

So too in 2009, Cooperativa expanded its advertising efforts to reach more consumers throughout Puerto Rico using the allegedly infringing mark. Rather than primarily advertising its products and services in local publications as it had done in the past, Cooperativa used much more expansive efforts to advertise its services using the allegedly infringing mark, and included billboards, cable television, and athletic sponsorship in those efforts. There is no dispute that Cooperativa expanded its business from a regional to an island-wide business and expanded its allegedly infringing activity "such that it [was] placed more squarely in competition with the plaintiff."[9]

[9] As the McCarthy treatise notes, changes in the mark can also support a finding of progressive encroachment: specifically, "[c]hanges in the quality or quantity of the allegedly infringing use can often excuse delay in suing." See 6 McCarthy, supra, § 31:20. McCarthy notes that, "[f]or example, where defendant

-25-

As to the third requirement, there is no doubt that Oriental brought suit shortly after these changes occurred. The complaint was filed on May 21, 2010, which was just after Cooperativa began redirecting its operations and advertising efforts in 2008 and 2009, respectively. There is not even a contention that Oriental unreasonably delayed bringing suit after Cooperativa began its corporate expansion and increased its advertising activities.

The primary dispute in this case concerns the first requirement. This prong of the test asks first whether the right to relief was uncertain at an earlier time as to justify delay in

incorporated as 'Ever-Ready Fluorescent Company,' selling electrical products under other marks, and 27 years later in 1971 began selling high-intensity lamps and bulbs with the trademark 'Ever-Ready' on them, the court found that Union Carbide's suit filed in 1971 was timely." 6 Id. (citing Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366 (7th Cir. 1976)). This view has been adopted by some circuits. See, e.g., Mead Johnson & Co. v. Baby's Formula Svc., Inc., 402 F.2d 19 (5th Cir. 1968)(holding that, where the defendant used a non-infringing mark for years and then changed the mark to an infringing use, the years of non-infringing use are not counted towards laches); Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc., 205 F.2d 921 (7th Cir. 1953) (rejecting laches defense under the doctrine of progressive encroachment where plaintiff knew that the defendant was making a minimal use of an infringing mark but did not sue until the defendant changed its corporate name to include the infringing mark); O. & W. Thum Co. v. Dickinson, 245 F. 609, 623 (6th Cir. 1917) (rejecting laches defense under progressive encroachment theory where plaintiff "took definite action" after the defendant had made "radical and apparently permanent changes in [its] trademark and trade dress").

Changes in the mark here cannot support a progressive encroachment finding because Oriental seeks to invoke the doctrine of progressive encroachment not as to the changed mark, but as to the earlier COOP ORIENTAL mark and similar marks.

bringing suit; that is, the defendant's activities did not present a clear case of infringement. Thus, the progressive encroachment doctrine allows the plaintiff to "wait[] until the 'likelihood of confusion looms large' to bring the action." See, e.g., Kellogg, 209 F.3d at 570-71 (quoting Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 462 (4th Cir. 1996)); Profitness Physical Therapy, 314 F.3d at 67 (same). This is so because "the plaintiff [should have] some latitude in the timing of its bringing suit" where the infringement has not become clearly actionable. Kellogg, 209 F.3d at 570. This test requires the court to perform a likelihood of confusion analysis, "determin[ing] . . . whether and when any likelihood of confusion may have ripened into a claim." Id. at 571 (quoting Kason Indus., 120 F.3d at 1206-07 (emphasis added)).

Alternatively, the inquiry under the first prong is whether the earlier infringement (in this case, the pre-2009 infringement), even if actionable, was so small in scope that a reasonable trademark owner could conclude that an infringement suit was not worth the costs of bringing suit. Specifically, the "trademark owner need not sue in the face of de minimis infringement by the junior user." Tillamook Country Smoker, 465 F.3d at 1110 (emphasis in original); see also Grupo Gigante, 391 F.3d at 1103 ("The [progressive encroachment] doctrine allows a plaintiff to delay when a defendant engages in de minimis infringement at first, but then gradually encroaches on the

-27-

plaintiff's market."); <u>AM Gen. Corp.</u> v. <u>DaimlerChrysler Corp.</u>, 311 F.3d 796, 823 (7th Cir. 2002)(noting that a trademark owner can "'tolerate de minimis or low level infringements' and still have the right to 'act promptly'")(quoting 6 McCarthy, <u>supra</u>, § 31:21)); 6 McCarthy, <u>supra</u>, § 31:20 (noting that progressive encroachment does not require the trademark owner to sue immediately for a "low level infringement").

We agree that the progressive encroachment doctrine allows an infringement plaintiff to tolerate de minimis or low-level infringements prior to bringing suit (assuming that the other requirements of the doctrine are satisfied). Here, we conclude that any potential pre-2009 infringement relating to Cooperativa's use of the COOP ORIENTAL marks was de minimis. Although Cooperativa produced some evidence of advertisements from between 1995 and 1998 that used the COOP ORIENTAL mark, all but one of these advertisements were from a single newspaper in the Humacao region, and the one exception appeared in another regional newspaper. And although Cooperativa also provided evidence that it ran a handful of national television advertisements in 1997, there is no evidence that these advertisements used the allegedly infringing COOP ORIENTAL mark, as opposed to Cooperativa's full corporate name. Further, although the COOP ORIENTAL mark may have appeared in Cooperativa's logo since 1996, Cooperativa did not furnish any evidence from between 1999 and 2009 demonstrating how or in what

degree this logo was disseminated in Puerto Rico. Indeed, there are no advertisements of any sort from Cooperativa in the record dated between 1999 and 2009. Finally, although Cooperativa provides evidence that it registered the domain name www.cooporiental.com in 2004, and such a domain had the potential to reach a wide audience, Cooperativa failed to provide evidence that either (1) the website was consistently active since 2004 (indeed, record evidence indicates that the site was still under construction in 2010); or (2) the website was frequented by its customers or other users — specifically, Cooperativa furnished no evidence of hit counts or other indicators or website traffic. Given the national scope of Oriental's business, the limited geographic scope of Cooperativa's business, and the limited scope of the allegedly infringing uses, we conclude that the allegedly infringing activity was de minimis before 2009 and that the doctrine of progressive encroachment applies. Thus, it was reasonable as a matter of law for Oriental to delay bringing suit against Cooperativa with respect to the COOP ORIENTAL mark and similar marks.

Based on the undisputed facts, the doctrine of progressive encroachment defeats the laches defense asserted by Cooperativa. On remand, Cooperativa's laches defense is precluded.

**V.**

For the foregoing reasons, we vacate the district court's judgment to the extent that the district court found that Oriental

did not assert claims of infringement based on Cooperativa's use of the COOP ORIENTAL mark and similar marks.  We remand to the district court to determine whether the COOP ORIENTAL mark and similar marks create a likelihood of confusion, and to fashion an appropriate injunction if a likelihood of confusion is established.

**Affirmed-in-part; Vacated-in-part; and Remanded**.

**Costs to neither party**.