UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: June 22, 2017    Decided: July 27, 2018)

Docket No. 16-3602-cv

————————————————————

Excelled Sheepskin & Leather Coat Corp.,

*Plaintiff-Counter-Defendant-Appellee,*

v.

Oregon Brewing Company,

*Defendant-Counter-Claimant-Appellant.*

————————————————————

Before:

DENNIS JACOBS, PIERRE N. LEVAL and REENA RAGGI, *Circuit Judges*.

Defendant Oregon Brewing Company ("OBC") appeals from the grant of summary judgment in favor of Plaintiff Excelled Sheepskin & Leather Coat Company ("Excelled") by the United States District Court for the Southern District of New York (George B. Daniels, *J.*), finding that OBC infringed Excelled's trademark in ROGUE for apparel, enjoining OBC from use of the mark on apparel in department stores, and dismissing OBC's counterclaims for infringement and for cancellation of Excelled's federal trademark registrations. Because OBC was the senior user and the evidence did not show that it was precluded by laches, the court erred in granting summary judgment for Excelled. VACATED in part, REVERSED in part, and REMANDED.

MICHAEL A. GROW, Arent Fox LLP,
Washington, DC & BERNICE K. LEBER,
Arent Fox LLP, New York, NY, *for
Plaintiff-Counter-Defendant-Appellee.*

JOHN J. DABNEY, McDermott Will &
Emery LLP, Washington, DC, *for
Defendant-Counter-Claimant-Appellant.*

LEVAL, *Circuit Judge*:

In a trademark dispute over use of the brand-name ROGUE on t-shirts, sweatshirts, hats and similar apparel, Defendant Oregon Brewing Company ("OBC") appeals from the grant of summary judgment in the United States District Court for the Southern District of New York (George B. Daniels, *J.*) in favor of Plaintiff Excelled Sheepskin & Leather Coat Corporation ("Excelled"). OBC is a commercial brewery, which sells beer under the brand name ROGUE nationwide. Since 1989, OBC has also used the ROGUE brand on clothing, such as t-shirts, sweatshirts, hats, and similar apparel. Excelled is an apparel company. In 2000, it began to use ROGUE as a brand on leather coats and jackets. In 2009, Excelled began to use ROGUE, in department stores and stores that sell only clothing ("clothing-only stores"), on the same categories of apparel that OBC had long marketed under ROGUE.

Excelled sued OBC in 2012 alleging *inter alia* trademark infringement based on OBC's sale of ROGUE-branded apparel *in department and clothing-only stores* beginning in 2011. OBC counterclaimed in 2012 alleging *inter alia* trademark infringement by Excelled, based on Excelled's sales of ROGUE-branded t-shirts, sweatshirts, and hats beginning in 2009. OBC also sought cancellation of four of Excelled's federal trademark registrations on the theory of fraud on the trademark office.

The district court granted Excelled's motion for summary judgment on trademark infringement against OBC, and also granted Excelled's motion for summary judgment dismissing OBC's counterclaims. The district court relied primarily on the fact that, notwithstanding OBC's priority in the use of the mark on the types of apparel in question, Excelled was the first to use the mark on such goods *in department stores and clothing-only stores*, which the district court concluded gave Excelled priority in those categories of stores. In addition, the court concluded that Excelled's prior registration of its ROGUE mark in the Trademark Office established its priority notwithstanding OBC's prior use, and that OBC had forfeited its claims through laches by delay in

suing. We find that the district court erred in its reasoning. We accordingly vacate in part, reverse in part, and remand.

BACKGROUND

I.     Facts

The following facts are undisputed.

OBC is a commercial brewery founded in 1988. Its principal merchandise is beer, which it sells under the mark "ROGUE." Since approximately 1989, it has also sold ROGUE-branded clothing and other merchandise, including t-shirts, hats, sweatshirts, and aprons, throughout the United States, including in its pubs, brewery, bed and breakfasts, and hop farm. Since the mid-1990s, OBC has sold ROGUE clothing at beer festivals across the country and via mail order nationwide. In 1995, OBC began distributing its ROGUE clothing through third-party retailers Fred Meyer and Cost Plus. Since 2004, OBC's ROGUE clothing has been sold through other retail stores and websites, including Beer Clothing Co., Crazy Shirts, Portland State University's bookstore, Whole Foods, and sharpedgebeer.com. In 2011, OBC began selling its ROGUE clothing through department and clothing-

only stores, including Urban Outfitters, Nordstrom, and Sears. Since 2012, OBC has used its own website and those of eBay and Amazon in the sale of its ROGUE clothing.

Excelled is an apparel company founded in 1927. Excelled's first sale of any item bearing the mark ROGUE occurred in 2000. Initially, most of Excelled's clothing products were made of, or contained, leather. Following the 2008 recession, Excelled "expand[ed] its product line" and began selling more non-leather products, including complete outfits of ROGUE-branded clothing. Excelled currently sells a variety of clothing and footwear bearing marks that include the word ROGUE. Excelled sells its ROGUE products through department stores and clothing-only stores, including Nordstrom, Saks, Neiman Marcus, and Macy's, and through websites, including its own: rogue.us.com.

In 2004 and 2005 respectively, Excelled and OBC both applied to the United States Patent and Trademark Office ("PTO") to register the mark ROGUE. Excelled had previously registered the mark ROGUE LEATHER BY REILLY OLMES. App'x 764-65. As part of its application to register ROGUE, Excelled submitted a sworn declaration that, as of 2004, it was using ROGUE

on "men's, ladies' and children's clothing, namely coats, jackets, vests, shirts and pants." *Id.* at 786 (internal quotations omitted). After the PTO expressed concern about a likelihood of confusion from both parties' uses of the mark, Excelled and OBC entered into a Settlement and Trademark Consent Agreement ("the Agreement") requiring each to delete certain items of clothing from their pending applications. Excelled consented to OBC's registration of ROGUE for all clothing "excluding jackets, coats and skirts." *Id.* at 194. OBC consented to Excelled's registration of ROGUE for "jackets, coats and skirts . . . and/or footwear," and further to Excelled's *use* of ROGUE on "jackets, coats, *shirts* and skirts." *Id.* at 193 (internal quotations omitted) (emphasis added). The Agreement asserted the parties' belief that, "so long as the respective marks are used in the manner set forth in this Agreement there will be no likelihood of confusion between the respective marks." *Id.* at 194, 198.

OBC submitted a copy of the Agreement to the PTO and narrowed its application to "clothing, namely t-shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats, and not including jackets, coats and skirts." *Id.* at 822 ¶88 (internal quotations and emphasis omitted). The PTO responded by

explaining that "[t]he exclusion of specific articles of clothing is not enough to overcome a likelihood of confusion with an identical mark for other clothing items." *Id.* at 791 ¶20 (internal quotations omitted). OBC further narrowed its application to goods "sold primarily in the trademark owner's brewpubs and web site." *Id.* at 822 ¶90. The PTO then registered OBC's ROGUE mark for goods sold "primarily in the trademark owner's brewpubs and web site." *Id.* at 792-93. The PTO also registered Excelled's ROGUE mark for "clothing, namely, coats, jackets, vests, shirts and pants," *Id.* at 774 (registration number 3,346,559). Excelled subsequently filed a Declaration of Use and Incontestability for the mark ROGUE LEATHER BY REILLY OLMES, submitting to the PTO a sworn declaration that, as of February 2010, the mark was "in use in commerce on . . . men's women's and *children's* clothing made in whole or in substantial part of leather, namely, coats, vests, shirts, and pants." *Id.* at 767 (internal quotations omitted) (emphasis added). Excelled also registered the marks ROGUE STATE and ROGUE for footwear. *Id.* at 774.

II.     <u>Proceedings Below</u>

On February 24, 2012, Excelled brought this action against OBC alleging *inter alia* trademark infringement under the Lanham Act, 15 U.S.C.

§§ 1114, 1125, and the common law. OBC raised a series of affirmative defenses including the equitable defense of unclean hands. OBC also brought counterclaims alleging *inter alia* trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and the common law and seeking cancellation of four of Excelled's federal trademark registrations under a theory of fraud on the PTO.

OBC moved for summary judgment dismissing Excelled's claims, arguing that OBC's prior use of the ROGUE mark defeated those claims as a matter of law. Excelled cross-moved for summary judgment granting its claims and dismissing OBC's counterclaims, arguing *inter alia* that Excelled had priority in the ROGUE mark in the relevant market of department and clothing-only stores. On August 5, 2014, the district court granted summary judgment in favor of Excelled granting its trademark infringement claims and dismissing all of OBC's counterclaims. *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, No. 12 Civ. 1416 (GBD) (RLE), 2014 WL 3874193, at *13 (S.D.N.Y. Aug. 5, 2014). On September 28, 2016, the district court awarded damages and fees to Excelled and entered a permanent injunction against OBC's use of the mark ROGUE "in the advertising or sale of any clothing in

Department and Clothing Stores; or in any trade channels other than where OBC's ROGUE branded beer is sold as complements to and in promotion of Defendant's own brewing and beverage business." *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, No. 12 Civ. 1416 (GBD) (REL), 2016 WL 5409482, at *4 (S.D.N.Y. Sept. 28, 2016). OBC timely filed notice of this appeal.

DISCUSSION

"The test [for trademark infringement] looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *see also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581–82 (2d Cir. 1990). Whether a mark is entitled to protection depends, in part, upon a showing of prior use. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d at 146; *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 741 (2d Cir. 1998) (explaining trademark law "protects the rights of the first user of a trademark"); *La Societe Anonyme de Parfums le Galion v. Jean Patou, Inc.*, 495

F.2d 1265, 1271 (2d Cir. 1974) ("The user who first appropriates the mark obtains [a]n enforceable right to exclude others from using it . . . .").

I.      OBC's Infringement Counterclaims

OBC appeals the district court's grant of summary judgment to Excelled dismissing OBC's counterclaims for trademark infringement and for cancellation of Excelled's federal trademark registrations (Counts I-IV). While OBC opposed Excelled's motion for summary judgment as to these counterclaims before the district court, OBC did not cross-move for summary judgment on its counterclaims.

Excelled contends and the district court found that OBC's rights to the ROGUE mark were inferior to those of Excelled "with respect to sales in department and clothing stores," and that any trademark rights that OBC might have with respect to use of ROGUE on clothing are limited to "sales as complements to and in promotion of its beer business." *Excelled*, 2014 WL 3874193, at *5, *7 n.16. The court explained that the first use of a mark does not give the user exclusive rights over the mark "as to all goods or services and across all markets." *Id.* at *5. Prior to 2000 (the date of Excelled's first PTO application), there was no evidence of OBC sales of ROGUE clothing

unrelated to the promotion of its beer, and the evidence showed OBC did not begin selling ROGUE clothing in department or clothing-only stores until 2011.

We disagree with the district court's conclusion. Common law trademark rights derive from "initial appropriation and use [] accompanied by an intention to continue exploiting the mark commercially." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d at 1271. "To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory . . . ." *Id*. at 1271-72 (internal citation omitted). The district court found that OBC deliberately and continuously sold ROGUE-branded clothing throughout the United States since 1989. Even if those uses were intended primarily to support OBC's ROGUE trademark for beer, they were nonetheless bona fide continuous nationwide sales in significant quantities and were sufficient to establish a protectable priority in use of the mark for the sale of such goods. While it is correct, as the district court reasoned, that first use of a mark does not give the owner exclusive rights over the mark "as to all goods or services and across all markets," *Excelled*, 2014 WL 3874193, at

*5, it does not follow that the owner's rights are limited to the types of stores in which the owner has previously exploited the mark. The law does not limit the owner's trademark rights to the types of stores in which it has sold, leaving the mark up for grabs in any other type of store. The fact that, prior to 2011, OBC did not sell in department stores and clothing-only stores does not mean that a new user was free to usurp OBC's priority in such stores.

To be sure, the senior user of a mark does not preserve its priority as to expansion into other unrelated goods or services. *See, e.g., Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 216-17 (2d Cir. 2003) (leaving open whether "the sauce market [was] sufficiently related to the restaurant market such that the proprietor of a mark for a restaurant can prevent another's use of a similar mark in the sauce market"); *see also Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172-73 (2d Cir. 1976) (acknowledging senior user's rights in "related, non-competing goods," but indicating absence of such rights in "non-competitive products [that] are [not] sufficiently related"). But expanding into new product lines in which someone else has priority is different from beginning to sell the goods on which one has nationwide priority in a new category of stores (where a junior user is making infringing

sales under the senior user's mark). This dispute does not involve OBC newly undertaking to use ROGUE on goods for which Excelled had established priority. OBC maintained its senior common law rights against Excelled's intervening junior use of the mark for the same items of ROGUE-branded clothing that OBC has sold continuously since 1989.

Excelled's PTO registrations do not change our analysis. The district court reasoned incorrectly that Excelled had priority use of the ROGUE mark "in the department and clothing store markets" because Excelled's federal registration gave rise to a statutory presumption of the validity of its mark. *See* Lanham Act § 7(b), 15 U.S.C. § 1057(b); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."). But a statutory presumption may be overcome. "As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark." *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999). Notwithstanding Excelled's

PTO registrations in 2003, 2004, 2007, and 2011, OBC established its trademark rights through roughly twenty years of priority in deliberate and continuous nationwide use of the mark since 1989.

As an alternate basis for dismissing OBC's trademark infringement counterclaims, the district court concluded that OBC "lost any common law rights in the [ROGUE] mark in connection with sales of clothing in department and clothing stores" because "[f]rom 2005 onward, after OBC became aware of Excelled's use of the [ROGUE] mark for clothing, OBC could have objected to Excelled's use, but never did." *Excelled*, 2014 WL 3874193, at *11 n.12. We disagree.

While the Lanham Act includes no specific statute of limitations, in evaluating a laches defense to trademark infringement in a New York suit, we analogize to New York's six-year statute of limitations for fraud claims. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). The laches clock begins to run when the trademark owner "knew or should have known, not simply that [the infringer] was using the potentially offending mark, but that [it] had a provable infringement claim against [the infringer.]" *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314

F.3d 62, 70 (2d Cir. 2002). For claims brought after a six-year delay, there is a presumption of laches so that the trademark owner must show the inequity of dismissal on that basis. *Conopco*, 95 F.3d at 191. For claims brought within six years, "there is no presumption of laches and the burden remains on the [infringer] to prove the defense." *Id*. To prevail, the infringer "must prove that it has been prejudiced by the [trademark owner's] unreasonable delay in bringing the action." *Id*. at 192.

The district court concluded that the laches clock began to run against OBC when it obtained actual knowledge of Excelled's use of the ROGUE mark in 2005, at least seven years before OBC filed its counterclaims on October 4, 2012. That view is incorrect. OBC could not have known it "had a provable infringement claim against [Excelled]," *ProFitness*, 314 F.3d at 70, until it obtained knowledge not merely that Excelled was using the ROGUE mark, but that it was doing so on categories of apparel over which OBC had the exclusive right to use the ROGUE mark. OBC submits that it did not obtain such knowledge until 2009. Accordingly, at least on OBC's version of the facts, the laches clock began to run in 2009, less than four years before OBC filed its 2012 counterclaims.

As the party moving for summary judgment, Excelled bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Excelled presented no evidence refuting OBC's position that it neither knew nor should have known of any sales by Excelled of ROGUE branded t-shirts, sweatshirts or hats until 2009 and that Excelled did not earlier sell these categories of apparel. OBC relies in part on the agreement it made with Excelled in 2007 by which Excelled acknowledged OBC's exclusive rights as to all clothing "excluding jackets, coats and skirts." App'x 194. Excelled's President William Goldman attested that, since 2000, Excelled sold "a line of clothing products, including jackets, coats, shirts, pants and vests under the mark ROGUE . . . , and since that time Excelled has continuously sold such products . . . ." *Id.* at 121. Goldman's declarations, however, do not attest to Excelled's sales prior to 2009 in the categories of merchandise (t-shirts, sweatshirts, hats, etc.) in which OBC had priority. *See* Goldman Decl. Ex. C, No. ECF 62-3 *and* Goldman Decl. Exs. F, G, Nos. ECF 81-4, 81-5, *Excelled*, No. 12 Civ. 1416 (GBD) (S.D.N.Y.). Excelled has failed to show absence of material disputes of fact as to when

OBC had knowledge of "a provable infringement claim" that triggered its obligation to sue. *See ProFitness*, 314 F.3d at 70.

In granting summary judgment to Excelled, the district court concluded that the laches clock began to run against OBC in 2005. In so doing, the court failed to consider the evidence in the light most favorable to OBC. *Cf. Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (A court considering a motion for summary judgment must "construe[] the evidence in the light most favorable to the non-moving party, and draw[] all reasonable inferences in its favor."). Properly construing the evidence and drawing all inferences in OBC's favor, less than four years passed before OBC brought suit. Hence, there is no presumption of laches, and Excelled—as the defendant in OBC's counterclaims—bears the burden to prove that OBC's delay was unreasonable and caused prejudice to Excelled. *See Conopco*, 95 F.3d at 191-92.

Excelled has failed to meet this burden. Furthermore, it is not as if OBC did nothing on learning of Excelled's use of the mark, leaving Excelled to believe there was no impediment to its exploitation of ROGUE. On first learning of Excelled's use of the ROGUE mark in 2005, OBC filed opposition

to Excelled's pending PTO registrations. This immediately put Excelled on notice that its use of ROGUE was contested. OBC pursued its opposition by negotiating the 2007 Agreement restricting Excelled's use and registration of the mark, by suing Excelled in 2011 in Oregon state court in an attempt to obtain specific performance of the 2007 Agreement, and by appealing the dismissal of the Oregon state action. During the period in which Excelled charged OBC with laches, Excelled was fully aware that OBC was taking litigious steps opposing Excelled's right to use the mark on t-shirts, sweatshirts, and hats. Assuming that OBC learned in 2009 of Excelled's use of the mark on such items, OBC brought suit in less than four years. Excelled has made no persuasive showing that this delay was unreasonable, and, especially given its awareness that it was entering contested ground, its generalized assertion that it invested development, advertising, and promotional resources into the ROGUE brand during those four years is insufficient to support a finding of laches. *See* Plaintiff-Appellee Br. 29. Construing such facts and drawing all inferences in favor of OBC, we reject the district court's conclusion that OBC had "lost" its priority rights.

\*    \*    \*

In sum, Excelled has failed to show entitlement to summary judgment dismissing OBC's trademark infringement counterclaims. The district court's grant of summary judgment to Excelled dismissing Counts I-III of OBC's counterclaims, which allege trademark infringement, false designation, and unfair competition, is accordingly vacated and the claims are remanded for further proceedings consistent with this opinion.

## II.      Excelled's Infringement Claims

OBC appeals the district court's grant of summary judgment in favor of Excelled on Excelled's Counts I-III and V, which allege that OBC committed counterfeiting, trademark infringement, false designation of origin, and unfair competition when OBC began selling ROGUE-branded apparel in department and clothing-only stores in 2011. OBC also appeals the denial of its motion for summary judgment dismissing these claims.

As stated at the outset, in assessing claims of trademark infringement, we consider, first, whether the plaintiff's mark is entitled to protection, and, second, whether defendant's use of the mark is likely to cause consumer confusion. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d at 146. The district court

resolved both questions in Excelled's favor, concluding in pertinent part as to the first that Excelled "has priority of use of the [ROGUE] mark for sales in the department and clothing store markets . . . ." *Excelled*, 2014 WL 3874193, at *11. The district court relied on the observations that "Excelled's certificates of registration of the [ROGUE] marks give rise to a statutory presumption that its marks are valid," and that "Excelled was the first to use and the first to register its [ROGUE] marks for use throughout the United States in the *department and clothing store* markets." *Id.* at *5-*6 (emphasis in original).

As we explained above, this reasoning was error. OBC was the senior user of ROGUE on several categories of apparel nationwide and established a protectible priority in the mark's use for such goods. The fact that it had not sold in department or clothing-only stores did not mean that Excelled, as a junior user, was free to usurp OBC's mark in those stores. As a result, Excelled cannot show that it holds a protectible priority in the mark for the same categories of apparel and, thus, as a matter of law cannot prevail on its trademark infringement claims.

Accordingly, we reverse the district court's grant of summary judgment to Excelled on Excelled's infringement claims (Counts I-III and V) and the

court's denial of OBC's motion for summary judgment dismissing these claims. The district court's award of an injunction and damages and fees against OBC are also reversed, as that relief was premised on the district court's liability determination as to the infringement claims. The court should enter judgment dismissing Excelled's Counts I-III and V.

### III.    OBC's Counterclaim for Cancellation of Excelled's Trademarks

OBC's counterclaim alleged that Excelled fraudulently obtained its PTO registrations and sought cancellation of Excelled's registrations of the marks ROGUE, ROGUE for footwear, ROGUE LEATHER BY REILLY OLMES, and ROGUE STATE (Count IV). Excelled moved for summary judgment dismissing the claim. The district court granted summary judgment to Excelled, dismissing OBC's counterclaim without addressing OBC's allegations of fraud.[1] OBC appeals from that ruling.

---

[1] Later in the opinion, the district court discussed the fraud allegation, treating it as an "unclean hands defense" to Excelled's trademark infringement claims, thus examining the allegations in the context of OBC's motion seeking dismissal of Excelled's claim of infringement. Because we have determined that OBC has priority rights in use of the ROGUE mark, we need not consider whether OBC's assertion of Excelled's alleged fraud against the PTO shows unclean hands so as to defeat Excelled's claim of infringement.

Our precedents require a party alleging fraudulent registration to prove by clear and convincing evidence:

1. A false representation regarding a material fact.

2. The person making the representation knew or should have known that the representation was false ("scienter").

3. An intention to induce the listener to act or refrain from acting in reliance on the misrepresentation.

4. Reasonable reliance on the misrepresentation.

5. Damage proximately resulting from such reliance.

*Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270-71 (2d Cir. 2011).

As the party moving for summary judgment dismissing the claim, Excelled bore the burden to show an absence of clear and convincing evidence supporting OBC's cancellation counterclaim. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

OBC submitted that Excelled defrauded the PTO (1) by failing to disclose the 2007 Agreement and (2) by falsely claiming that it had sold certain goods continuously.

As to the first allegation, it is undisputed that the Agreement was in effect as of April 2007, that Excelled agreed to limit "any future application to

register ROGUE" to "jackets, coats and skirts," App'x 193, and that Excelled agreed to amend its existing and pending registrations to comply with that limitation. OBC argues that Excelled "deliberately withheld" the Agreement from the PTO while it continued to own and apply for new and renewal registrations, and that this was a material omission because "the PTO refuses to register marks for goods that the applicant is contractually prohibited from registering." Def. Br. 43. Excelled contends that it could not have concealed the Agreement because OBC had already disclosed it to the PTO, and in any event the Agreement was immaterial since the PTO found on reviewing OBC's application that the Agreement "had no bearing on the issue of confusion," and OBC has failed to present any evidence that Excelled had willful intent to deceive the PTO. Plaintiff-Appellee Br. at 37-38.

For OBC's second allegation, it asserts that Excelled's PTO applications falsely represented that Excelled had sold ROGUE-branded pants, shirts, and children's clothing continuously for three years or more, whereas the record evidence shows that it did not. Excelled contends that it "produced numerous representative samples of documents showing sales of all the goods" listed in its registration application, including "children's sized clothing," *Id.* at 39

(citing App'x 308-09 ¶¶10-17 and Dkt. 81-4 & 81-5), and that OBC failed to produce evidence of Excelled's "knowledge that the statements were false" or of its "willful intent to deceive the PTO." *Id.* (citing Dkt. No. 109 at 17-18). Excelled implies that any misstatements in its registration applications were "inadvertent error" made in good faith. *Id.* at 39-40 (citing App'x 308 ¶9).

We find that Excelled has failed to show an absence of clear and convincing evidence supporting OBC's cancellation counterclaim, and that OBC has raised triable issues of fact as to whether Excelled knowingly made material omissions and false statements with intent to deceive the PTO. First, the evidence that the 2007 Agreement on its face required Excelled to delete "shirts," "pants," and "vests" from its trademark registrations, and that Excelled failed to do so, supports a reasonable inference that Excelled's failure to disclose the Agreement in its own PTO application was a willful false material omission. Second, the record evidence of Excelled's style designs from 1999 to 2009, which includes no designs for children's clothing, no designs for shirts before 2009, and no designs for pants spanning a three-year period before 2009, supports a reasonable inference that Excelled had not "continuously sold" pants, shirts, and children's clothing for three years or

more at any time prior to 2012, and that its statements otherwise to the PTO were false. Third, Excelled has failed to show an absence of clear and convincing evidence as to its knowledge and intent to deceive, and the evidence suggesting that Excelled made material omissions and false statements to the PTO provides sufficient circumstantial evidence to raise a triable issue of fact as to scienter.

In presuming the validity of Excelled's registration for the mark ROGUE, the district court relied on determinations of disputed material facts about the continuity of Excelled's sales that usurped the province of the jury. We vacate the district court's grant of summary judgment to Excelled on OBC's trademark cancellation counterclaim, and remand the claim for trial.

## CONCLUSION

We have considered Excelled's remaining arguments in favor of dismissal, and find them to be without merit. The judgment of the district court is VACATED in part, REVERSED in part, and REMANDED.