**Richard HOGAN, Petitioner–Appellee,**

**v.**

**Ron KOENIG, Chairman of Prison Terms, Respondent–Appellant.**

**No. 88–15620.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1990.

Decided June 4, 1990.

As Amended Nov. 27, 1990.

---

Karl S. Mayer, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellant.

Donald Specter, Prison Law Office, San Quentin, Cal., for petitioner-appellee.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

WIGGINS, Circuit Judge:

Ron Koenig, Chairman of the California Board of Prison Terms, appeals the district court's grant of habeas corpus to Richard Hogan, a California state prisoner. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

In 1981, a California superior court sentenced Hogan, a citizen of Canada, to twenty-six years to life imprisonment for first degree murder. Under the Treaty Between the United States and Canada on the Execution of Penal Sentences, July 19, 1978, 30 U.S.T. 6263–6272, T.I.A.S. No. 9552, Hogan claims entitlement to transfer to Canada to serve the remainder of this sentence.

To be eligible for transfer under the Treaty, a prisoner must be a citizen of the country to which he wishes to transfer. Art. II, § (b), 30 U.S.T. at 6267. He must also be serving a life sentence, Art. III, § 7(a), 30 U.S.T. at 6268, a sentence which states a definite termination date, Art. III § 7(b), 30 U.S.T. at 6268, a sentence which does not state a definite termination date but for which the authorities authorized to fix such a date have so acted, *id.*, an indeterminate sentence as a dangerous or habitual offender, Art. III, § 7(c), 30 U.S.T. at 6268, or any sentence as a juvenile, Art. III, § 7(d), 30 U.S.T. at 6268. As a precondition to the transfer of a prisoner, the "authorities of the [convicting] state" must also consent to the transfer. Art. III, § 5, 30 U.S.T. at 6268.

In 1984, the Board of Prison Terms refused Hogan's request for a transfer, stating that Hogan was not eligible for transfer under the Treaty until California set a definite termination date for his sentence in accordance with Art. III, § 7(b). In 1986 state habeas proceedings, a California Superior Court found that Hogan was serving

a life sentence within the meaning of Art. III, § 7(a) of the Treaty and, thus, eligible for transfer even though California had not set a definite termination date for his sentence. The Board then considered Hogan's application and refused to consent to his transfer. The Board mentioned in its decision the seriousness of the offense of first degree murder and the length of time remaining in Hogan's sentence.

The California Court of Appeal subsequently reversed the Superior Court's judgment and found Hogan ineligible for transfer under the Treaty because it found Hogan was not under a life sentence within the meaning of the Treaty. *In re Hogan*, 187 Cal.App.3d 819, 232 Cal.Rptr. 90 (1986). The California Supreme Court denied review.

Hogan then petitioned for a writ of habeas corpus in the district court. The district court granted the writ, finding that Hogan's sentence was a life sentence within the meaning of the Treaty and that the Board of Prison Terms had relied on improper factors in denying consent to transfer.

█ We review de novo a district court's grant of a writ of habeas corpus. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985).

█ Appellant argues that in declining consent to Hogan's transfer, the Board had the discretion to consider the gravity of Hogan's offense and the amount of time remaining to be served. Article III, Section 6 of the Treaty provides, "[i]n deciding upon the transfer of an Offender, the authority of each Party shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender." 30 U.S.T. at 6268. Appellee argues this clause requires the Board to consider only a prisoner's best interests in granting or withholding consent to a transfer. Appellee contends that by refusing to give its consent to Hogan's transfer, the Board considered only California's interests, not the best interests of Hogan, and therefore violated the Treaty.

We need not decide this question. California is neither a party to the Treaty nor the authority of a party to the Treaty.[1] Therefore, California is not bound by the language in Article III, Section 6 of the Treaty.

█ California has decided to cause Hogan to serve his sentence where he committed his crime, and not in his native land. California has the power to make such a decision, and the Treaty expresses no limitations on the basis on which California may make that decision. As California has validly denied consent to Hogan's transfer, we need not consider Hogan's remaining argument that he is receiving a life sentence and, thus, would have been eligible for transfer if California had consented to the transfer.

The judgment of the district court is REVERSED and the case is REMANDED.

---

1. The parties to the Treaty are the United States and Canada. *See, e.g.,* Preamble, 30 U.S.T. at 6265 ("The Government of the United States of America and the Government of Canada ... [h]ave agreed as follows:"); Art. VIII, § 2, 30 U.S.T. at 6272 ("the Treaty shall continue in force until thirty days from the date upon which *either* Party gives written notice to the *other* Party of its intention to terminate the Treaty") (emphasis added). The authority of a party is that entity designated by a party "to perform the functions provided in th[e] Treaty," Art. III, § 1, 30 U.S.T. at 6267. As Congress has designated only the Attorney General of the United States to perform the functions provided in the Treaty, 18 U.S.C. § 4102, he is the only authority of the United States within the meaning of the Treaty. *Cf.* Art. III, § 5, 30 U.S.T. at 6268 ("If the Offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, the approval of *the authorities of that state or province,* as well as that of the federal authority, shall be required.") (emphasis added).