**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2813, 20-2900
_____

KARS 4 KIDS INC.

V.

AMERICA CAN!

AMERICA CAN! CARS FOR KIDS

V.

KARS 4 KIDS INC.

KARS 4 KIDS INC.,
                        Appellant 20-2813

KARS 4 KIDS INC.
V.
AMERICA CAN!

AMERICA CAN! CARS FOR KIDS
V.
KARS 4 KIDS INC.

AMERICA CAN!; AMERICAN CAN!  CARS
FOR KIDS,
Appellants 20-2900
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-14-cv-07770, 3-16-cv-04232)
District Judge:  Honorable Peter G. Sheridan
_____

Argued July 7, 2021
_____

Before:  SHWARTZ, KRAUSE, and FUENTES, <u>Circuit
Judges</u>.

(Filed: August 10, 2021)
_____

OPINION
_____

Christopher Cariello [ARGUED]
Peter D. Vogl
Orrick Herrington & Sutcliffe
51 West 52nd Street
New York, NY 10019

Upnit K. Bhati
Orrick Herrington & Sutcliffe
1152 15th Street, N.W.
Columbia Center
Washington, DC 20005

Eleonore Ofosu-Antwi
Liza M. Walsh
Mark D. Haefner
Walsh Pizzi O'Reilly & Falanga
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102

Jonathan Z. King,
Cowan, Liebowitz & Latman
114 West 47th Street
New York, NY 10036

      Counsel for Appellant

Aubrey N. Pittman [ARGUED]
Suite 700
100 Crescent Court
Dallas, TX 75201

Karen A. Confoy

Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648

Allison L. Hollows
Fox Rothschild
101 Park Avenue
17th Floor
New York, NY 10178

Robert S. Tintner
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103

Christopher R. Kinkade
FisherBroyles
100 Overlook Center
2nd Floor
Princeton, NJ 08540

      Counsel for Appellee

SHWARTZ, <u>Circuit Judge</u>.

      Kars 4 Kids, Inc. ("Kars 4 Kids") and America Can! Cars for Kids ("America Can") used similar trademarks. Each sued the other, alleging violations of state and federal law related to the use of those marks. Because (1) America Can did not preserve its challenge to the District Court's denial of summary judgment on its trademark cancelation claims, (2)

4

America Can was first to use its mark in Texas and Kars 4 Kids has waived any challenge to the validity of America Can's marks, and (3) the District Court did not abuse its discretion by declining to award enhanced monetary relief or prejudgment interest, we will affirm in part. We will, however, vacate in part and remand for the District Court to reexamine its laches and disgorgement conclusions under the governing law.

I

A

America Can and Kars 4 Kids are charities that sell donated vehicles to fund children's programs. America Can began receiving donations in the late 1980s and, in the early 1990s, began using the mark "Cars for Kids" in advertising campaigns. Its campaigns included between two and five radio advertisements per week by Bonnie Curry, a radio personality whose programs reached up to one million people in the Dallas area. Curry's advertisements began in 1993 and have continued "pretty consistent[ly]" since then. App. 2135. Between 1995 and 2001, America Can also advertised in the Dallas Morning News, which published several articles discussing the "Cars for Kids" program.

Kars 4 Kids was founded in 1995, and it has used its marks in its advertising since at least 1997. Kars 4 Kids first used "flyers and bumper stickers," App. 1975, then distributed nationwide mailers. In the early 2000s, Kars 4 Kids began advertising in regional newspapers and national Jewish publications. In 1999, Kars 4 Kids started using a musical jingle in its radio and television advertisements. In 2003, Kars

5

4 Kids began advertising in online magazines and purchased keyword advertisements on Yahoo and Google.

In 2003, America Can noticed Kars 4 Kids' advertisements in Texas and sent a cease and desist letter, asserting America Can's rights to the "Cars for Kids" mark in Texas. After sending that letter, America Can did not notice Kars 4 Kids' advertisements in Texas for several years. Kars 4 Kids, however, kept advertising.[1] For example, in 2005, Kars 4 Kids advertised nationally in Reader's Digest. It also used Google advertising, which allowed Kars 4 Kids' advertisements to appear nationwide—including in Texas—when potential donors used certain search terms. In 2011, Kars 4 Kids procured the URL www.carsforkids.com, which it initially used to solicit donations.[2] By 2011, America Can began seeing Kars 4 Kids advertisements and, in 2013, sent

---

[1] During this period, America Can received communications from at least one confused donor but the record does not reveal whether the donor was based in Texas.

[2] Kars 4 Kids stopped using the URL and "parked" the domain, meaning it is no longer "redirected to a live webpage." App. 3122. According to America Can, the parked domain both benefited and harmed it. On the one hand, America Can could "continue to get some of the donations [when its] donors [were] looking for [its] name, and Kars 4 Kids . . . [would not have been] getting them." App. 3125. In fact, after Kars 4 Kids parked the domain, America Can's "donations in specifically Dallas and Houston, picked up significantly." App. 3122. On the other hand, "if somebody [went] to find [America Can] and [found the] name at a website that [was] down . . . they're going to look at [America Can] as incompetent" and choose not to donate their vehicle. App. 3125.

Kars 4 Kids another cease and desist letter, alleging that Kars 4 Kids was unlawfully using "KARS 4 KIDS" in Texas.

B

Kars 4 Kids sued America Can in 2014, bringing federal and state trademark infringement, unfair competition, and trademark dilution claims, and seeking equitable relief. America Can filed its suit in 2015, asserting the same claims and seeking cancelation of Kars 4 Kids' trademark for 1-877-KARS-4-KIDS under 15 U.S.C. § 1119, financial compensation**,** and a nationwide injunction prohibiting Kars 4 Kids from using the mark.

The District Court denied the parties' cross-motions for summary judgment, including America Can's request for mark cancelation, "[d]ue to the disputed facts with regard to the trademark in this matter."[3] Kars 4 Kids Inc. v. America Can!,

---

[3] America Can has not preserved its challenge to this order. "[W]hen a legal issue initially raised at summary judgment . . . depends on the resolution of factual questions, motions for judgment as a matter of law under Rules 50(a) and (b) are . . . required to preserve the legal issue for appellate review." Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 186-87 (3d Cir. 2015).

Under 15 U.S.C. § 1119, district courts may "order the cancelation of registrations, in whole or in part." One basis for cancelation is fraud on the Patent and Trademark Office ("PTO"). 15 U.S.C. §§ 1064(3), 1119. A trademark applicant commits fraud under the Lanham Act when he knowingly makes false, material representations of fact in connection with an application for a registered mark. See Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of

7

No. 14-cv-7770, 2018 WL 5298406, at *8 (D.N.J. Oct. 25, 2018).

Before the liability trial, the District Court determined that America Can's request for damages equal to Kars 4 Kids' profits was "plainly a claim for disgorgement of profits, and not a claim for America Can[]'s own damages." Kars 4 Kids Inc. v. America Can!, No. 3:14-cv-7770, 2019 WL 2078670, at *2 (D.N.J. May 10, 2019). Because disgorgement is an equitable remedy, the Court granted Kars 4 Kids' motion to present disgorgement evidence at a bench trial, if necessary, following the jury's verdict on liability. Id. at *2-3.

Following the close of evidence to the jury, both parties moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Kars 4 Kids argued, among other things, that "America Can[] failed to demonstrate that it has

Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord., 702 F.3d 1279, 1289 (11th Cir. 2012). Succeeding on a fraud claim requires showing by clear and convincing evidence that the applicant intended to deceive the PTO when applying for the mark. In re Bose Corp., 580 F.3d 1240, 1243, 1245 (Fed. Cir. 2009).

The District Court correctly determined that the cancelation claim required resolving a factual question: whether Kars 4 Kids was truthful when applying to register its mark. Because this requires resolution of disputed facts and America Can failed to renew its challenge in its motion for judgment as a matter of law under Rule 50(a), it has waived its ability to seek review of the summary judgment order denying its cancelation claim.

8

ownership and priority" of the mark, App. 2293, but did not argue that America Can's mark is invalid.  The District Court reserved judgment on those motions.  The jury then found that America Can had trademark rights and that Kars 4 Kids willfully infringed those rights in Texas.  The jury also found neither party proved their trademark dilution claims and that America Can failed to prove that Kars 4 Kids had obtained registration of its 1-877-KARS-4-KIDS mark by false representations.  Furthermore, as the District Court observed, the jury returned no verdict on any state law claim.[4]

The District Court then held a bench trial on the equitable claims and remedies.  The Court held that the defense of laches did not apply, finding America Can's executive credibly testified that he did not see Kars 4 Kids' advertisements in Texas from 2004 to 2011 and that Kars 4 Kids seemed to have "pulled back their advertising" following America Can's 2003 cease and desist letter.  Kars 4 Kids Inc. v. America Can!, No. 3:14-cv-7770, 2020 WL 1550804, at *4 (D.N.J. Apr. 1 2020).  The Court found that this lack of advertising "lulled America Can[] into a passive position until 2011" and "preclude[d] a finding of inexcusable delay."  Id. The Court also found that Kars 4 Kids tried to "unscrupulously apply" laches "[b]y waiting to tee-up its laches defense until the remedy stage after litigating for four years." Id.  The Court also stated, without explanation, that Kars 4 Kids did not "show any prejudice" from America Can's alleged delay.  Id.

After concluding that laches did not apply, the District Court ordered Kars 4 Kids to disgorge its profits in Texas.  To arrive at the disgorgement amount, the Court first examined

---

[4] No party appealed this finding.

9

Kars 4 Kids' "gross and net revenues from the donations generated by the sale of vehicles originating from Texas." Id. at *5. For the years 2008-2019, the parties agreed that the gross revenue was $18,454,452 and net revenue was $16,067,943. The Court deducted $3,447,191 in Texas-specific advertising expenses, $362,210 in national advertising expenses, and $1,011,000 in expenses related to compensation and office expenses, and ultimately ordered Kars 4 Kids to disgorge $10,637,135.[5]

The District Court declined to award enhanced monetary relief because (1) "Kars 4 Kids willfully infringed upon America Can[]'s mark in Texas only; but not in any other state," and (2) "the jury found no fraud in procuring Kars 4 Kids['] trademark." Id. at *9. The Court also explained that, because the case was not "exceptional" under the Lanham Act, America Can was not entitled to attorneys' fees or prejudgment interest. App. 83.

The District Court enjoined Kars 4 Kids from using its mark in Texas and from using www.carsforkids.com. The Court explained that "[d]ue to consumers' confusion . . . and the parked domain issues . . . compensatory damages are insufficient, and thus some injunctive relief is necessary to distinguish these charitable corporations." Id. at *12. The Court declined to cancel Kars 4 Kids' registered mark, however, because "the jury determined that Kars 4 Kids did not knowingly procure its registration of the 1-877-Kars-4-Kids trademark by false or fraudulent means, which suggests that

---

[5] The parties did not appeal the District Court's disgorgement calculation.

the jury found that the mark should not be cancelled." Id. at *13.

Kars 4 Kids renewed its motion for judgment as a matter of law under Rule 50(b), arguing, among other things, that America Can's mark is invalid. The District Court held that Kars 4 Kids preserved its invalidity argument, finding "some interconnectedness" between the validity argument in its Rule 50(b) motion and the ownership argument it presented in its Rule 50(a) motion. App. 127. Still, the Court found that there was sufficient evidence from which the jury could have found the mark was either distinctive, or that it established secondary meaning.

Both parties appeal.

## II[6]

### A

"[T]o win a trademark claim, a plaintiff must establish that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services."[7] Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1338(a). We have jurisdiction under 28 U.S.C. § 1291.

[7] Kars 4 Kids wisely does not argue that America Can failed to establish likelihood of confusion given the evidence of customer confusion and diverted donations. Notably, America Can benefited from the same confusion.

11

187, 192 (3d Cir. 1990). Ruling on Kars 4 Kids' motion for judgment as a matter of law under Rule 50(b), the District Court held that the jury reasonably found that America Can owns a valid trademark in Texas.[8]

We agree that America Can owns the mark, but, unlike the District Court, conclude that Kars 4 Kids failed to preserve its challenge to the validity of that mark.[9] As a result, Kars 4 Kids' effort to overturn the jury's liability verdict fails.

---

[8] "We exercise plenary review of an order granting or denying a motion for judgment as a matter of law and apply the same standard as the district court." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Id. When evaluating "whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." Id. "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." Jaasma v. Shell Oil Co., 412 F.3d 501, 503 (3d Cir. 2005) (citation omitted).

[9] We review a district court's determination whether a party waived an argument by failing to raise it earlier in the proceedings for abuse of discretion. See Seed Co. v. Westerman, Hattori, Daniels & Adrian, LLP, 961 F.3d 1190, 1195 (D.C. Cir. 2020) ("We conclude that the appropriate standard of review [of the district court's determination that a

12

First, America Can owns its unregistered mark. To determine rightful ownership of an unregistered mark, we generally apply "[t]he first use test . . . , taking account of the well-established common law principle of 'first-in-time, first-in-right' that rewards actual and continuous use in commerce as between market competitors." Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc., 855 F.3d 163, 170 (3d Cir. 2017). Thus, "[w]ith respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce." Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted).

Kars 4 Kids does not dispute that it started using its mark in Texas in 2003 and the evidence shows America Can continuously used its mark before 2003. For instance, Bonnie Curry testified that she has performed between two and five advertisements per week for America Can beginning in 1993 and has done so "pretty consistent[ly]" since then. App. 2135. She testified that America Can used "Cars for Kids . . . in the early days," App. 2144, and that when she talks about "what they do, it's always been part and parcel of that process. The

---

party waived a substantive claim] is for abuse of discretion."); Am. Trucking Ass'ns, Inc. v. N.Y. State Thruway Auth., 886 F.3d 238, 244-45 (2d Cir. 2018) ("We review for abuse of discretion a district court's decision that a party did not waive an argument by failing to raise it earlier in the proceedings."); Consumer Fin. Prot. Bureau v. Gordon, 819 F.3d 1179, 1187 (9th Cir. 2016) ("A district court's determination that a party waived an issue is reviewed for an abuse of discretion.").

Can Academies change lives. And to make that happen, you give to Cars for Kids." App. 2141. Cheryl Podrugach, America Can's former public relations manager, further testified that Grant East, founder of America Can's predecessor, "came up with" Cars for Kids "in the early []90s," App. 2148, recalled America Can advertisements using the mark during that period, and explained that America Can's use of the mark was in "full force" when she was hired in 2002 and that America Can was still using the mark in its advertisements when she began working with the car donation program in 2007. App. 2153. Finally, Malcolm Wentworth, America Can's Chief Operating Officer, testified about various America Can advertisements using the phrase "Cars for Kids." For instance, between 1995 and 2001, the Dallas Morning News published several articles discussing the "Cars for Kids" program. Based on that evidence, the jury reasonably found that America Can had established continuous use prior to 2003 and hence owned the mark in Texas.

2

Kars 4 Kids argues that America Can's mark is invalid because it is descriptive and had not established secondary meaning before Kars 4 Kids' first use in Texas. Kars 4 Kids, however, waived this argument by failing to present it in its Rule 50(a) motion.

"[A] post-trial Rule 50 motion can only be made on grounds specifically advanced in a motion for a directed verdict at the end of plaintiff's case. . . . ." <u>Kutner Buick, Inc. v. Am. Motors Corp.</u>, 868 F.2d 614, 617 (3d Cir. 1989); <u>see also</u> <u>Williams v. Runyon</u>, 130 F.3d 568, 571-72 (3d Cir. 1997) ("[A] defendant's failure to raise an issue in a Rule 50(a)(2)

14

motion with sufficient specificity to put the plaintiffs on notice waives the defendant's right to raise the issue in [its] Rule 50(b) motion."). In its Rule 50(a) motion, Kars 4 Kids argued that "America Can[] failed to demonstrate that it has ownership and priority" of the mark. App. 2293. Based on that argument, and viewing "some interconnectedness" between validity and ownership of a mark, the District Court determined that Kars 4 Kids had not waived the validity arguments made in its Rule 50(b) motion. App. 127. Validity and ownership, however, are distinct. See Opticians Ass'n of Am., 920 F.2d at 192 (noting validity and ownership are separate elements of a trademark infringement claim). Each element requires different showings. Validity turns on whether a mark is inherently distinctive or has acquired secondary meaning, see Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 230 (3d Cir. 2017) ("A valid and legally protectable mark must be 'distinctive,'" meaning it is "inherently distinctive" or acquired "secondary meaning"), while ownership turns on which party established "first use," see Covertech, 855 F.3d at 170 ("The first use test is generally proper [to determine ownership of] unregistered trademarks. . . . ."). Because Kars 4 Kids presented no arguments on the validity of the mark in its Rule 50(a) motion, the District Court abused its discretion when it concluded that Kars 4 Kids had not waived its validity arguments. Because Kars 4 Kids waived its validity challenge to America Can's mark, we will not review Kars 4 Kids' validity arguments or its related concurrent use or source-identifier arguments.

B

Following a bench trial on remedies, the District Court declined to apply laches and ordered Kars 4 Kids to disgorge

15

profits tied to its Texas activities. The Court also held that neither enhanced monetary relief nor prejudgment interest were warranted. With respect to laches and disgorgement, we will remand for the District Court to reexamine these issues under the governing law. With respect to enhanced damages and prejudgment interest, however, we conclude the Court acted within its discretion in denying both forms of relief.

1[10]

The Lanham Act does not contain a statute of limitations and instead subjects all claims to "the principles of equity," such as laches. Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 135 (3d Cir. 2005) (quoting 15 U.S.C. § 1117(a)). To determine whether laches bars a claim, we consider two elements: (1) the plaintiff's "inexcusable delay in bringing suit," and (2) "prejudice to the defendant as a result of the delay." Id. at 138. To determine which party bears the burden of proof for a laches claim, courts first identify "the most analogous statute of limitation as a guideline," id. at 135, and then consider whether that period has expired. If the period has expired, then the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice," and the plaintiff "carrie[s] the burden of proving that its delay was excusable and that [the delay] did not prejudice [the defendant]." Id. at 138-39 (emphasis omitted) (citation omitted).

---

[10] "Because laches is an equitable doctrine, we review the District Court's decision for abuse of discretion." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 226 (3d Cir. 2007).

16

The parties agree that "[c]laims under the Lanham Act are properly analogized to New Jersey's six year fraud statute." Kaufhold v. Caiafa, 872 F. Supp. 2d 374, 379 (D.N.J. 2012). Because America Can first discovered Kars 4 Kids' allegedly wrongful conduct in 2003 and did not bring its counterclaims until 2015, the statute of limitations had run on America Can's claims.[11]  Accordingly, America Can bears the burden of disproving delay and prejudice. See Santana, 401 F.3d at 138-39.[12]

_____

[11] The District Court appears to have found that the 2011 website registration constituted a new act of infringement that was not barred under the six-year limitations period, and so the presumption did not apply. While many alleged Lanham Act violations "are ongoing," at least one of our sister circuits has recognized that "the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002).

[12] Contrary to America Can's assertions, Kars 4 Kids did not waive the laches defense because Kars 4 Kids raised it in its answer, in the final pretrial order, in its trial brief, and at trial. Cf. Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1160 (3d Cir. 1989) (concluding that, although the defendant raised a statute of limitations defense in its answer, it waived the defense because "it did not file a motion or present argument before the district court on [that] issue at any time before or at the trial").

Aside from reiterating this waiver argument, America Can also urges us to affirm the District Court's laches analysis on two alternative grounds. It first paints Kars 4 Kids as an "intentional" infringer who cannot take advantage of laches.

17

Appellee Br. at 52; cf. Anheuser-Busch v. Du Bois Brewing, 175 F.2d 370, 374 (3d Cir. 1949) (noting that "a fraudulent infringer cannot expect tender mercy of a court of equity"). In making this argument, America Can relies on the jury's finding that Kars 4 Kids willfully infringed. Kars 4 Kids retorts that the jury instructions here allowed the jury to identify willfulness based on recklessness alone, not intent. The District Court stated that the conduct was "willful," but did not say whether it reached this conclusion because it found that Kars 4 Kids was a knowing infringer or reckless infringer. Because the District Court will be revisiting its laches analysis, we leave it to the Court to decide whether Kars 4 Kids counts as a knowing infringer and whether its finding impacts its laches analysis. America Can also insists that Kars 4 Kids has unclean hands because it waited almost as long as America Can before filing suit. We also leave it to the District Court to determine whether the equities of the case outweigh any finding of delay or prejudice. See, e.g., Waddell v. Small Tube Prods., 799 F.2d 69, 79 (3d Cir. 1986); see also A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992) ("Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied."); Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 497 (2d Cir. 1961) (Friendly, J.) ("[W]here both sides failed to press their claims after knowledge of the facts, this Court has reached the conclusion, seemingly far more sensible, that both were barred.").

A plaintiff is not obligated to sue until it knows or should know that the defendant's conduct constitutes trademark infringement. See, e.g., Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018) ("The laches clock begins to run when the trademark owner knew or should have known, not simply that [the infringer] was using the potentially offending mark, but that [it] had a provable infringement claim against [the infringer]." (quotation marks and citation omitted)); Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental, 698 F.3d 9, 21 (1st Cir. 2012) ("[L]aches applies only where the plaintiff knew or should have known of the infringing conduct."); cf. Covertech, 855 F.3d at 175-76 (noting that "the relevant date for quantifying the 'delay' [for purposes of applying the acquiescence defense] is when the trademark owner either knew or should have known of the existence of a provable claim of infringement"). Thus, we examine delay based upon whether a reasonable person in the defendant's shoes would have waited to file suit. See Claussen v. Mene Grande Oil Co., 275 F.2d 108, 111 (3d Cir. 1960).

In examining the delay element, the District Court focused exclusively on the evidence of activity America Can observed or did not observe in Texas. Based on that evidence, the Court concluded that Kars 4 Kids' apparent inactivity in Texas, as demonstrated by the lack of observed advertisements in Texas and the minimal amount of advertising directed into Texas, lulled America Can into believing the 2003 cease and desist letter was effective and Kars 4 Kids "pulled back [its Texas] advertising." Kars 4 Kids Inc., 2020 WL 1550804, at *4. These observations, however, did not account for Kars 4 Kids' national advertising and whether those advertisements reached Texas. Those considerations are relevant because the

19

delay inquiry hinges on whether a reasonable entity in America Can's shoes would have filed suit sooner. We will therefore remand to allow the District Court to consider the evidence of this national activity and whether it nevertheless excused America Can's delay in filing suit. See Univ. of Pittsburgh v. Champion Prods. Inc., 686 F.2d 1040, 1044 n.14 (3d Cir. 1982) ("Open and notorious use by the defendant is relevant to the plaintiff's knowledge and, thus, whether its delay is excusable."). The District Court should also explain whether that activity impacts its view concerning prejudice from the

delay.[13, 14]

---

[13] In addressing the prejudice element, the District Court stated that Kars 4 Kids "cannot show prejudice" but did not explain the basis for its conclusion. App. 74. As a general rule, a plaintiff must disprove both delay and prejudice to avoid the laches defense when the analogous statute of limitations has run. See Santana, 401 F.3d at 138-39. America Can argues that Kars 4 Kids was not prejudiced because, as a recipient of a cease and desist letter, it assumed the risk that, if it continued using the mark, subsequent investments in the mark would be lost. Some of our sister circuits agree with this view. See Roederer v. J. Garcia Carrion, S.A., 569 F.3d 855, 859 (8th Cir. 2009); Elvis Presley Enters., Inc, v. Capece, 141 F.3d 188, 205 (5th Cir. 1998); Conan Properties, Inc. v. Conan Pizza, Inc., 752 F.2d 145, 151-52 (5th Cir. 1985); see also Citibank, N.A. v. Citibanc Grp., Inc., 724 F.2d 1540, 1546 (11th Cir. 1984) (concluding that a plaintiff's claim was not barred by laches because "defendants knew of plaintiff's objections but nevertheless proceeded to enlarge their use" of the plaintiff's mark). The District Court is free to consider these cases as well as any other facts in the record when it examines whether America Can has carried its burden to prove both that it did not inexcusably delay bringing suit and that Kars 4 Kids was not prejudiced from such a delay. We express no opinion as to the proper outcome of the laches analysis on remand.

[14] Kars 4 Kids is wrong to say that the District Court's evaluation of laches "infected its evaluation of the injunctive relief factors." Appellant's Br. at 57. First, Kars 4 Kids argues that America Can's delay cuts against finding irreparable harm, but "trademark infringement amounts to irreparable injury as a matter of law." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992). Second, Kars 4 Kids incorrectly

Section 35(a) of the Lanham Act provides for the disgorgement of an infringer's profits, "subject to the principles of equity." 15 U.S.C. § 1117(a).[16] Disgorgement "does not follow as a matter of course upon the mere showing of an infringement," and, for example, "will be denied where an injunction satisfies the equities of a case." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 209 (3d Cir. 1999) (en banc) (quotation marks omitted). To "evaluat[e] whether equity supports disgorging the infringer's profits," we consider "(1) whether the [infringer] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Banjo Buddies, Inc. v. Renosky, 399

---

argues that the District Court "never balanced America Can's demand for an injunction against the prejudicial consequence of prohibiting [Kars 4 Kids] from using marks it had cultivated nationally for years," Appellant's Br. at 58, because the Court explicitly said that it "must balance the rights of America Can[], as found by the jury, against the right of Kars 4 Kids to advertise in all other geographic regions and states outside of Texas." App. 88.

[15] "We . . . review the District Court's award of equitable remedies under section 35(a) of the Lanham Act under an abuse of discretion standard." Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 173 (3d Cir. 2005).

[16] "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

F.3d 168, 175 (3d Cir. 2005) (quoting Quick Techs. v. Sage Grp. PLC, 313 F.3d 338, 349 (5th Cir. 2002)).

The District Court did not consider all of these factors.[17] In fact, it focused solely on "the appropriate accounting methodology to determine the disgorgement of net profits," Kars 4 Kids Inc., 2020 WL 1550804, at *5, which covers only the second Banjo Buddies factor: "whether sales have been diverted," 399 F.3d at 175.[18]  Because the Court did not address the other Banjo Buddies factors and thus did not show that it balanced the equities, we will vacate the disgorgement order and remand for the Court to apply the remaining factors.  See 4 Pillar Dynasty LLC v. N.Y. & Co., 933 F.3d 202, 214-15 (2d Cir. 2019) (explaining that a district court "must still balance equitable factors in assessing the propriety of a profits award" and concluding that the court adequately did so); Malack v. BDO Seidman, LLP, 617 F.3d 743, 745 (3d Cir. 2010) ("An abuse of discretion occurs if the district court's decision rests upon . . . an improper application of law to fact." (quotation marks omitted)); Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174-75 (4th Cir. 2006) (holding that a district court abused its discretion in awarding disgorgement under the Lanham Act where "[t]he court summarily stated . . . that the equities had

---

[17] Kars 4 Kids did not waive its objection to the District Court's failure to apply the Banjo Buddies factors.  It presented the Banjo Buddies factors in its brief in opposition to America Can's request for disgorgement and addressed them in its post-trial proposed findings of fact and conclusions of law.

[18] The donations at issue here are equivalent to diverted sales for a for-profit entity.

been balanced" without "specify[ing] the equitable factors it had utilized in making such an award").[19]

3[20]

The District Court acted within its discretion when it declined to award enhanced monetary relief under the Lanham Act. Section 1117(a) authorizes awards of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). When an award is based on profits, which "is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."[21] Id. If the court increases the monetary award, such an

---

[19] We express no opinion as to whether application of the Banjo Buddies factors should lead the Court to reach a different result.

[20] We review a district court's decision on whether to enhance damages under the Lanham Act for abuse of discretion. See Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 263 (2d Cir. 2014); Skydive Ariz., Inc. v. Quattrocchi, 673 F.3d 1105, 1110 (9th Cir. 2012).

[21] Section 1117(a) permits an award of up to treble damages when a party shows its own damages and an enhancement when an award based on the defendant's profits is inadequate. See 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment . . . for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

enhancement "shall constitute compensation and not a penalty." Id.; see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1077 (9th Cir. 2015) ("The district court ought to tread lightly when deciding whether to award increased profits, because granting an increase could easily transfigure an otherwise-acceptable compensatory award into an impermissible punitive measure."). "Generally, actual, proven profits will adequately compensate the plaintiff." Fifty-Six Hope Rd. Music, 778 F.3d at 1077. Thus, in most cases, when disgorging profits, "the district court should award actual, proven profits unless the . . . infringer gained more from the infringement than the [infringer's] profits reflect." Id.; see also Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1157 (7th Cir. 1994) (noting that "the benchmark for making [an enhancement] determination" when a court disgorges a defendant's profits "is the likely benefit accruing to the defendant on account of its infringement").

America Can presents no arguments why an enhanced award, let alone an award equal to three times Kars 4 Kids' profits, is needed to fully compensate it or that such an award more accurately reflects Kars 4 Kids' true profits. Put another way, America Can offers no non-punitive rationale for enhancing the award.[22] Cf. Bos. Pro. Hockey Ass'n v. Dallas

---

[22] In its brief, America Can suggests that Kars 4 Kids' willful infringement alone justifies an enhanced award. While "willful infringement is central," to the decision whether to enhance damages, SecuraComm Consulting Inc. v. Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999), we have not held that willful infringement is alone sufficient to support an enhanced award. On the facts of this case, it was not an abuse of discretion to conclude that the evidence of Kars 4 Kids' willful

25

<u>Cap & Emblem Mfg., Inc.</u>, 597 F.2d 71, 77 (5th Cir. 1979) ("We would be reluctant to approve increased damages intended solely as punishment for conduct unrelated to . . . the actual damages caused by [the infringement]."). Because America Can has not made such a showing, and the statute precludes punitive enhancements, the District Court appropriately declined to award enhanced compensation.

4[23]

---

infringement was not itself enough to justify an enhanced award, particularly where both parties benefited from the confusion. <u>Cf.</u> <u>4 Pillar Dynasty LLC</u>, 933 F.3d at 214 ("Even when a plaintiff sustains its burden of proving willfulness, courts should consider not only whether an enhanced profits award is appropriate, but also whether the disgorgement of all profits attributable to the infringing product is necessary to achieve the desired deterrent effect." (emphasis omitted)).

     To the extent America Can relies on deterrence as a basis for its request for an enhancement, it conceded at oral argument that deterrence is not a compensatory reason. Oral Argument at 45:17-45:21. Thus, it cannot serve as a basis for an enhanced award. <u>Cf.</u> <u>ALPO Petfoods, Inc. v. Ralston Purina Co.</u>, 913 F.2d 958, 969 (D.C. Cir. 1990) ("[D]eterrence is too weak and too easily invoked a justification for the severe and often cumbersome remedy of a profits award . . . [and] alone cannot justify such an award."); <u>Getty Petroleum Corp. v. Bartco Petroleum Corp.</u>, 858 F.2d 103, 113 (2d Cir. 1988) ("So long as its purpose is to compensate a plaintiff for its actual injuries—even though the award is designed to deter wrongful conduct—the Lanham Act remains remedial.").

    [23] "[I]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal

26

The District Court also properly declined to award America Can prejudgment interest.

Section 1117 authorizes monetary awards for trademark infringement. 15 U.S.C. § 1117. It "particularizes in considerable detail the types of monetary relief available for trademark infringement and defines the criteria for awarding each type." Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015). As discussed above, § 1117(a), which applies generally to trademark infringement cases, and which applies here, authorizes awards of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Section 1117(b), which applies to knowing and intentional use of a counterfeit mark, allows courts to also award, among other forms of relief, prejudgment interest. 15 U.S.C. § 1117(b).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (alteration in original) (citation omitted). Applying this principle, because § 1117(b) allows courts to award prejudgment interest and § 1117(a) does not provide for prejudgment interest,

_____

law is committed to the trial court's discretion." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 273 (3d Cir. 2010) (alteration in original). Thus, when Congress does not provide for prejudgment interest to a prevailing party, we review the District Court's decision for abuse of discretion. Id.

27

prejudgment interest is unavailable under § 1117(a).[24]  See Georgia-Pacific, 781 F.3d at 721-22.  Thus, the District Court correctly denied prejudgment interest on America Can's federal trademark infringement claims.

America Can is also not entitled to prejudgment interest under state law.  To obtain prejudgment interest on a state law claim, the party must prevail on that claim.  As the District Court observed, the "trademark infringement claims under the Lanham Act were the main claims in this case."  App. 121.  The

---

[24] Two sister circuits have determined that prejudgment interest is presumptively available to successful plaintiffs under § 1117(a).  See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1236-37 (10th Cir. 2000) (remanding to consider whether prejudgment interest was warranted and noting that "this Court has adopted a preference, if not a presumption, for prejudgment interest" for federal claims); Gorenstein Enters., Inc. v. Quality Case-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989) (affirming award of prejudgment interest under § 1117(a) because the "federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law").  Neither court, however, considered the text of § 1117 in its entirety, which shows Congress's intent to make prejudgment interest unavailable under § 1117(a).  The Gorenstein court, for instance, noted that "the statute makes no reference to prejudgment interest," 874 F.2d at 436, but failed to recognize that the next section refers to prejudgment interest.  Thus, because these courts overlooked this clear evidence of Congress's intent, we decline to adopt their conclusion that prejudgment interest is presumptively available under § 1117(a).

Court therefore found that "the jury did not consider the unfair competition as a separate cause of action but instead as an element of the trademark infringement cause of action." Id. Because America Can did not object to these observations, it has forfeited any right to assert that the jury found in its favor on a state law claim.[25] Cf. In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (deeming as forfeited arguments not developed in appellant's opening brief). Because there was no verdict in its favor on any state law claim, America Can has no basis to seek prejudgment interest under state law.

IV

For the foregoing reasons, we will affirm in part, vacate in part, and remand.

---

[25] Although the jury was instructed that it need not "consider unfair competition separately" from the trademark infringement claims, D. Ct. ECF No. 29 at 118, it was not asked to return a verdict on the claim. America Can neither objected to the instruction, id. at 106-07, nor sought a verdict on any state law claim.